**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernie PARR–PLA, Defendant-Appellant.**

**No. 75–1604.**

United States Court of Appeals,
Ninth Circuit.

March 3, 1977.

Rehearing and Rehearing En Banc
Denied April 15, 1977.

Ernie Parr-Pla pro se, Charles E. McClung, Fleming, Anderson & McClung, Pasadena, Cal., for defendant-appellant.

Lawrence Semenza, U. S. Atty., Richard Wright, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before BROWNING and WALLACE, Circuit Judges, and WILLIAMS, District Judge.*

OPINION

PER CURIAM:

Appellant was convicted of causing the interstate transportation of American Express Travelers Cheques with knowledge the checks contained counterfeit signatures and were stolen, and with possession of the checks with knowledge they were stolen.

1. Appellant challenges the sufficiency of the evidence that he knew the checks were stolen.

A government witness testified appellant telephoned him in Las Vegas and asked the witness to meet appellant's flight from San Francisco to Las Vegas. The witness agreed. When appellant disembarked he was carrying a black briefcase which he eventually left with the witness, who turned it over to the police. The briefcase contained approximately $22,000 worth of stolen American Express Travelers Cheques. The traveler's checks were unsigned, although at the time such checks are pur-

chased they must be signed on the top line by the purchaser in the presence of the seller.

Other evidence established that appellant had obtained his plane ticket under a false name. Appellant later attempted to cash ten $20 traveler's checks. The cashier testified that when he told appellant he was going to verify the traveler's checks by telephone, appellant became noticeably nervous and asked him not to do so. When appellant was arrested, 20 traveler's checks were found in his pockets, half of them signed at the top, the other half blank. After his arrest appellant called the witness with whom he had left the black briefcase and asked him to keep it for him for two or three years. Appellant admitted to an FBI agent that he knew he had violated the law and expected to be imprisoned. Appellant took the stand on his own behalf. His explanation of the circumstances contradicted that of other witnesses in important respects.

■ The jury may infer solely from unexplained possession of recently stolen property that the possessor had knowledge the property was stolen. *Barnes v. United States*, 412 U.S. 837, 841, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Even without the benefit of the inference, the evidence of appellant's knowledge is overwhelming.

■ 2. Over appellant's objection, government counsel in his opening statement undertook to list the essential elements of the offenses charged. It is the duty of the court, not counsel, to advise the jury as to the law, but departure from this rule is not reversible error absent some possibility of prejudice in the particular case. *See Copeland v. United States*, 80 U.S.App.D.C. 308, 152 F.2d 769, 770 (1945). Appellant has suggested none in this case.

3. Appellant contends that two statements admitted in evidence were taken from him in violation of *Miranda v.*

---

* Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation.

*Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■ One of the statements was made to a private investigator employed by a hotel. *Miranda* does not apply to purely private interrogation. *United States v. Birnstihl,* 441 F.2d 368, 370 (9th Cir. 1971). The hotel investigator had been a deputy sheriff for 18 years. He had retired, however, and had no affiliation with any government law enforcement agency at the time he questioned appellant. There was no evidence that he acted as an agent of a law enforcement agency, *see United States v. Birnstihl, supra,* or that he questioned appellant at the suggestion or in aid of law enforcement officers, *see Corngold v. United States,* 367 F.2d 1, 4–5 (9th Cir. 1966).

■ The second statement was made to an FBI agent. It was admitted without objection. Its admission was not plain error. Indeed, it may not have been error at all. Whether the *Miranda* rule was violated depends upon facts that were not developed on the record. Because no objection was made, no hearing was held as to the circumstances surrounding the taking of the statement. Even if error clearly appeared, however, this is not a case in which the error, though not objected to, must be noticed "to prevent miscarriage of justice or to preserve the integrity and reputation of the judicial process." *Marshall v. United States,* 409 F.2d 925, 927 (9th Cir. 1969). Moreover, appellant's counsel opened the door to admission of the full conversation by asking the FBI agent on cross-examination whether appellant had made a particular statement in the course of the conversation. *See United States v. White,* 377 F.2d 908, 911 (4th Cir. 1967).

■ 4. Appellant argues that on redirect examination of the FBI agent the government was permitted to elicit certain testimony appellant characterizes as "double hearsay."

During cross-examination of the agent, appellant's counsel asked the agent whether he had "any evidence or any report of any kind that would show that any of these . . . traveller's checks were ever in the possession of [appellant] in California." The agent replied, "I don't believe I do." On redirect the witness was permitted to refresh his recollection by referring to a report regarding the investigation and then to testify that the answer he had given on cross-examination was not correct and that he had in fact received a report from another agent in San Francisco to the effect that appellant's girlfriend had said that appellant had $2,000 to $3,000 in traveler's checks in his possession in San Francisco approximately one week prior to the Las Vegas events. Since cross-examination was directed precisely to whether the witness had "any report of any kind" indicating possession by appellant of the traveler's checks in California, the redirect examination was clearly proper.

■ 5. Similarly, appellant's counsel, by inquiring on cross-examination of appellant's girlfriend whether she knew appellant was on "probation," opened the door to the disclosure on redirect examination of the fact that appellant had been convicted of murder.

6. Particularly because of the latter trial incident, appellant's counsel on appeal contends that the assistance given to appellant by trial counsel did not meet minimum constitutional standards.

Claims of inadequate assistance of counsel are ordinarily raised in collateral proceedings, rather than on appeal from a conviction, because "they usually require the development of facts outside the trial record." *United States v. Porter,* 431 F.2d 7, 11 (9th Cir. 1970). The trial record in this case is inadequate to fully evaluate the constitutional claim. For purposes of this appeal it is enough to say that the record before us does not establish error in this respect so plainly as to justify reversal. *United States v. Johnson,* 434 F.2d 827, 830 n. 2, 831 (9th Cir. 1970).

■ In this case, as in *Marshall v. United States, supra,* 409 F.2d at 927, the trial record suggests that counsel may have brought appellant's prior conviction and

consequent parole before the jury "deliberate[ly] and in furtherance of legitimate trial tactics." The thrust of the defense was that appellant was the dupe of the two men posing as potential customers of appellant's equipment leasing business and that appellant was unaware the checks were stolen. Appellant's counsel emphasized evidence that appellant had registered at the hotel in his own name, signed his own name to the checks, and offered his own driver's license as identification. Counsel brought out the fact that appellant was on parole to establish that appellant had a strong motive to avoid any difficulty with the law. Counsel minimized the conviction by pointing out that the crime occurred when appellant was only 17 years old, that appellant was not a direct participant but only an accessory after the fact, having helped the offenders escape, and that in the 37 years that had elapsed since his conviction appellant had led a blameless life, successfully completing 26 years of parole, operating a heavy equipment leasing business, and raising a family of seven. Counsel emphasized the strong deterrent effect of appellant's parole status, pointing out that appellant's parole continued for appellant's entire life and that if appellant violated the conditions of the parole by committing any offense he was subject to being returned to prison to serve a life term. Counsel might reasonably conclude that the jury would draw no adverse inferences from a prior offense so old and obviously unrelated to the offense charged and that the jury might well decide that it was unlikely that appellant, by the repeated negotiation in his own name of checks he knew to be stolen, would have deliberately exposed himself to the life imprisonment that would almost certainly follow a violation of his parole. Even if this judgment appears unwise in retrospect, *see United States v. Stern,* 519 F.2d 521, 524 (9th Cir. 1975), it was not so unreasonable as to mark counsel as ineffective. *See United States v. Grummel,* 542 F.2d 789, 791 (9th Cir. 1976).

■ Appellant relies upon two other trial incidents as indicia of ineffectual representation. The first is counsel's cross-examination of the FBI agent in such a way as to permit the prosecutor to elicit testimony regarding the reported statement of appellant's girlfriend that appellant had a large quantity of traveler's checks in his possession in San Francisco shortly before the Las Vegas incident. The point counsel sought to make on cross-examination was a valid one. Counsel is not to be faulted unless he knew or should have known of the report of the statement attributed to appellant's girlfriend. This question cannot be resolved on the present record. We cannot conclude on this record, therefore, that counsel erred at all, much less that his representation of appellant fell below the constitutional minimum.

■ Appellant's final argument is that trial counsel should have produced Harry Crow as a witness. Counsel had issued a subpoena for Crow, and Crow had been seen in the courthouse on the day of trial. When called to the stand, however, Crow was not present. Counsel asked the court to issue a contempt citation. The court asked counsel to approach the bench. After an unreported bench conference, counsel announced that the defense would rest. Crow was not a central witness; the record indicates that at most he would have confirmed a portion of appellant's testimony regarding appellant's activities a week before those underlying the charges, involving the passing of checks not the subject of the indictment. Moreover, the record does not disclose what occurred at the bench conference, or reveal the reasons that motivated counsel to rest the defense without seeking a delay of the trial to attempt to locate the witness. Since the witness's testimony would have related to collateral matters at best and, for all the record shows, counsel's reasons for resting may have been entirely sound, we cannot hold that his conduct was improper.

Affirmed.