92 F.3d 973
 45 Fed. R. Evid. Serv. 449, 96 Cal. Daily Op.
Serv. 6157,
96 Cal. Daily Op. Serv. 7730,
96 Daily Journal D.A.R. 10,106
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward P. COLLICOTT, Sr., Defendant-Appellant.
 No. 95-30140.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 9, 1996.
Decided Aug. 19, 1996.
As Amended Oct. 21, 1996.
 
 1
 Jeffry K. Finer, Finer & Pugsley, P.S., Spokane, Washington, for defendant-appellant.
 
 
 2
 Joseph H. Harrington, Assistant United States Attorney, Spokane, Washington, for plaintiff-appellee.
 
 
 3
 On Appeal from the United States District Court for the Eastern District of Washington, Wm. Fremming Nielsen, District Judge, Presiding. D.C. No. CR-94-0184-WFN.
 
 
 4
 Before: PREGERSON and TASHIMA, Circuit Judges, and JONES, District Judge.*
 
 ROBERT E. JONES, District Judge:
 
 5
 Appellant Edward P. Collicott, Sr. ("Collicott") appeals from his conviction on three counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). We reverse and remand for a new trial.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 I. The Surveillance and Arrest
 
 6
 On June 9, 1994, Spokane County Sheriff's Office Detectives ("Sheriffs") began surveillance of Collicott in Spokane, Washington. That day, Collicott rented a car in Spokane under a false name. Sheriffs observed Collicott driving this car, accompanied by Melauni Zaidi ("Zaidi").
 
 
 7
 At 9:52 p.m. that evening, Collicott checked into a motel with Zaidi in Yakima, Washington, under a false name. The surveillance team rented the room next door to Collicott. At 11:52 p.m., Sheriffs observed Collicott leaving the motel in his car. The surveilling officers followed Collicott and observed him exiting a convenience store with a white plastic bag. Collicott returned to the motel at 12:35 a.m.
 
 
 8
 Collicott and Zaidi checked out of the motel at 9:00 a.m. on June 10, 1994. Although two officers testified at trial that they observed Collicott put a white plastic bag into the rear passenger area of the rented car before driving away from the motel, neither officer stated that in their report.
 
 
 9
 Surveillance continued on the road. Shortly after Zaidi switched with Collicott as driver of the car, Sheriffs pulled them over. An officer observed Collicott reaching into the back seat of the car. When Sheriffs arrested Collicott, he falsely identified himself as William Collicott. Sheriffs obtained and executed a warrant, seizing $4,500 cash, syringes, balloons, and fake IDs, from Collicott's person. They found a white plastic bag behind the driver's seat containing 11 grams of heroin, 125 grams of methamphetamine, and 26.5 grams of cocaine.
 
 
 10
 Officer Chris Kehl ("Kehl") interviewed Zaidi at the time of the arrest. She had no cash or drugs on her. She was not charged with any offense.
 
 II. Trial Testimony
 
 11
 At Collicott's trial, the Government called Zaidi as a witness. She testified that she is an unemployed mother and a drug addict who supports herself through prostitution. She denied dealing drugs, but explained that the only drugs she had sold in the past 10 years was one-eighth ounce of marijuana in 1986.
 
 
 12
 Regarding the evening she spent with Collicott at the Yakima motel, Zaidi testified that Collicott placed a 'pile of money' on the bed in the motel room. Sometime later, Collicott's friend, named Luis, allegedly entered the motel room while she was cooking and smoking cocaine in the room. After Luis left, she noticed a brown paper bag was in the room but the money that Collicott placed on the bed was gone. Zaidi also testified that she could not hear any discussions between Collicott and Luis, and admitted that she was impaired by cocaine at the time.
 
 
 13
 On cross-examination, defense counsel asked Zaidi whether she recalled telling arresting officer Kehl that Luis came to the motel room between midnight and 1:00 a.m. that morning. Zaidi did not remember making any such statement. The colloquy was as follows:
 
 
 14
 Q. All right. Well, do you remember a police officer Kehl, K-e-h-l, or Chris Kehl or something, interviewing you?
 
 
 15
 A. No, I don't.
 
 
 16
 Q. You don't remember telling him that this person you claim came to the room in Yakima came between midnight and 1:00 a.m.?
 
 
 17
 A. No, I do not remember saying that.
 
 
 18
 Q. You don't remember saying that?
 
 
 19
 A. No, I don't.
 
 
 20
 Tr. 194. Zaidi was excused after a brief redirect examination.
 
 
 21
 Collicott then called Officer Kehl to the stand. The direct testimony of Officer Kehl follows:
 
 
 22
 Q. Okay. You were interviewing Melauni Zaidi after she was--the vehicle was stopped?
 
 
 23
 A. Yes.
 
 
 24
 Q. And as part of your interview * * * you wrote in your notes and I presume this is something she told you?
 
 
 25
 A. Yes.
 
 
 26
 Q. That sometime between midnight and one o'clock, a person allegedly arrived and delivered drugs to that room?A. Yes.
 
 
 27
 Tr. 326.
 
 
 28
 After this direct testimony, the Government attempted to examine Kehl about the remainder of the statements made by Zaidi to Kehl at the time of Collicott's arrest. However, Collicott objected on the ground that the testimony was improper hearsay and beyond the scope of the direct. The court overruled the objection and allowed Kehl to answer the question. The following is the exchange between Kehl, counsel, and the court:
 
 
 29
 Q. Good afternoon. Did Melauni Zaidi give you any further information about what occurred in the motel room on June 9th, 1994?
 
 
 30
 A. Yes, she did.
 
 
 31
 Q. What else did she say happened?
 
 
 32
 [Defense Attorney]: Your Honor, I am going to object, it is beyond the scope of direct.
 
 
 33
 COURT: Overruled.
 
 
 34
 [Defense Attorney]: Can we have a sidebar so I could make a record?
 
 
 35
 COURT: All right.
 
 
 36
 [Defense Attorney]: Judge, I called [Kehl] for the one question and anything else is hearsay. * * *
 
 
 37
 COURT: I think you have opened it up when you asked him what she said regarding what transpired in the hotel room. I think we ought to get the whole story.
 
 
 38
 [Defense Attorney]: Well, I totally object, Your Honor, and there is no basis for it to come in at this point. There is no exception to it.
 
 
 39
 [Prosecutor]: Judge, this is under 609(b). Your Honor, extrinsic evidence to impeach a witness can come in and it is not subject to the hearsay rules.
 
 
 40
 COURT: Yeah.
 
 
 41
 [Defense Attorney]: I don't believe that is the case here. This is not--this is hearsay of that person. There is no exception that applies here. She had a motive to fabricate her story right from the start.
 
 
 42
 It is not a prior inconsistent (sic) statement to rebut a charge of recent fabrication. It doesn't fit in the mold. It is straight hearsay and it is beyond the scope of direct totally.
 
 
 43
 COURT: Well, in the first place, I don't think it is beyond the scope of direct and what is it that you expect him to say?
 
 
 44
 [Prosecutor]: That she was in the room. A friend of Ed Collicott's came in by the name of Luis. Luis had a brown paper bag and put the bag down. Ed Collicott spread money out on the bed and the money was given to Luis.
 
 
 45
 COURT: So she saw that?
 
 
 46
 [Prosecutor]: Yes.
 
 
 47
 * * *
 
 
 48
 COURT: No, I think you have opened it up, Mr. Johnson.
 
 
 49
 [Defense Attorney]: All right. Well I want the record to reflect my objection on the--
 
 
 50
 COURT: It does.
 
 
 51
 [Defense Attorney]:--grounds that it is hearsay and there in no exception for that to come in.
 
 
 52
 Tr. 326-28 (emphasis added).
 
 
 53
 After this exchange, the Court permitted Kehl to answer the Government's question as to what else Zaidi said to him:
 
 
 54
 A. She said that once the subject she knew as Luis arrived, he immediately tossed her a bag of cocaine and she began to rock it up, make it into crack cocaine, and while she was doing that, Luis gave a brown paper bag to [Collicott] and they began talking about various drug transactions and wanting to have additional drugs fronted to him and [Collicott] gave some money to Luis which he spread out on the floor and was counting while they were talking and she overheard something to the effect of $11,000 worth of drugs had been bought in the previous week by the Collicott family.
 
 
 55
 Q. And did she tell you who Luis was?Defense Counsel: Again, I am going to object to hearsay and I ask for a continuing objection.
 
 
 56
 Court: Granted, you have the objection.
 
 
 57
 A. She told me that she believed--well, she wasn't sure if Luis was his name, but however he was arrested in Spokane earlier in the year for possessing or dealing drugs.
 
 
 58
 Q. And who contacted Luis in Yakima, did she say?
 
 
 59
 A. That once they arrived at the hotel, [Collicott] was making phone calls trying to contact him.
 
 
 60
 Tr. 329-30.
 
 
 61
 After deliberating, the jury found Collicott guilty of possession with intent to distribute a controlled substance. Collicott seeks reversal of his conviction because (1) the trial court erroneously admitted damaging out-of-court statements by the cooperating witness through testimony by an arresting officer, (2) the trial court erroneously allowed use of Collicott's prior drug convictions, (3) the conviction was based on perjured testimony by the cooperating witness, and (4) the Government violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose evidence to Collicott about Zaidi's involvement in previous drug deals.
 
 DISCUSSION
 
 62
 I. Kehl's Testimony Regarding Prior Statements Made by Zaidi
 
 
 63
 Collicott contended at trial and on appeal that the district court erred in admitting hearsay by Kehl, which violated the rules of evidence and his constitutional confrontation rights. The Government responded at trial that the statements were admissible under Fed.R.Evid. 609(b), which obviously does not apply.[1] On appeal, the Government argues that the district court properly admitted Kehl's testimony under two theories. First, Rule 801(d)(1) permits the Government to cross-examine Kehl with respect to other statements made by Zaidi at the time of the interview with Kehl because Collicott "opened the door" to the entire conversation between Kehl and Zaidi by questioning Kehl regarding specific statements from the conversation. Second, Zaidi's statements to Kehl were not hearsay under Rule 803(5) as a past recollection recorded.
 
 
 64
 Whether the district court correctly construed the hearsay rule is a question of law reviewable de novo. United States v. Gilbert, 57 F.3d 709, 711 (9th Cir.1995). However, district courts are granted broad discretion in admitting evidence, and their rulings are reviewed only for an abuse of discretion. Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir.1995).
 
 A. Rule 801(d)(1)
 Rule 801(d)(1) reads in its entirety:
 
 65
 A statement is not hearsay if--
 
 
 66
 (1) Prior statement by a witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person * * *.
 
 
 67
 Subsection (A) is not applicable here because Zaidi's statements to Kehl were not made under oath in a prior proceeding. Likewise, subsection (C) is also irrelevant because the challenged testimony did not involve prior identifications. Therefore, by arguing that Rule 801(d)(1) permits inquiry into the entire conversation between Zaidi and Kehl, the Government must be relying specifically on Rule 801(d)(1)(B).
 
 
 68
 The Supreme Court recently emphasized that admissibility of prior consistent statements under Rule 801(d)(1)(B) is "confined to those statements offered to rebut a charge of 'recent fabrication or improper influence or motive * * *.' " Tome v. United States, 513 U.S. 150, ----, 115 S.Ct. 696, 701, 130 L.Ed.2d 574 (1995) (quoting Rule 801(d)(1)(B)). Prior consistent statements by a witness "may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." Id. Consequently, under Rule 801(d)(1)(B), the prior consistent statements must rebut the charge of improper motive, not merely "bolster[ ] the veracity of the story told." Id. Furthermore, the Supreme Court added a temporal element to Rule 801(d)(1)(B), holding that "[t]he Rule permits the introduction of a declarant's consistent out-of-court statements * * * only when those statements were made before the charged recent fabrication or improper influence or motive." Id. at ----, 115 S.Ct. at 705.
 
 
 69
 For the purposes of determining the applicability of Rule 801(d)(1)(B), we first distill the progression of the relevant testimony:
 
 
 70
 (1) the declarant, Zaidi, testified about a drug dealer, Luis, coming to the hotel room and exchanging drugs for cash with Collicott;
 
 
 71
 (2) Zaidi was subject to cross-examination concerning this statement;
 
 
 72
 (3) on cross-examination, Collicott also asked Zaidi what she told Kehl about the time of day Luis arrived, but Zaidi responded that she did not remember;
 
 
 73
 (4) Collicott then called Kehl to testify about what Zaidi told him regarding the time of day Luis came to the room to perform a drug deal;
 
 
 74
 (5) in response, on cross-examination, the Government asked Kehl what else Zaidi told Kehl during that conversation.
 
 
 75
 As discussed above, a proponent must establish four elements under Rule 801(d)(1)(B): (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. Although the Government relies on Rule 801(d)(1)(B) for admission of Zaidi's out-of-court statements, it cannot establish any of the last three elements.
 
 
 76
 In fact, the Government argues that it need not establish these foundational requirements because Rule 801(d)(1)(B) permits the introduction of an entire conversation by a witness after the opposing party has "opened the door" by impeaching the witness using portions of that conversation. However, the plain language of Rule 801(d)(1)(B) does not suggest that where a party inquires into part of a conversation, the opposing party may introduce the whole conversation as substantive evidence under the Rule even though the statements do not rebut a charge of recent fabrication or improper motive. Moreover, Tome makes clear that statements are admissible under Rule 801(d)(1)(B) only if the statements were made before the existence of the motive to fabricate. 513 U.S. at ----, 115 S.Ct. at 701. As correctly noted by defense counsel at the sidebar conference with the court,[2] Zaidi's motive to fabricate, if she had one, would have existed from the moment she was stopped with Collicott by the Sheriffs because she did not want the Sheriffs to believe that she owned the drugs in the car. The Government's inability to satisfy the requirements of Rule 801(d)(1)(B), as set forth in the Rule and Tome, precludes it from relying on Rule 801(d)(1)(B) for admission of Zaidi's statements.
 
 
 77
 Nevertheless, we do recognize that under the "opened door" rationale, this Circuit has historically allowed a party to introduce prior statements because they were part of the same conversation or document from which impeaching inconsistent statements were drawn.[3] See United States v. Payne, 944 F.2d 1458, 1471 (9th Cir.1991) (admitted consistent statement from the same investigative reports from which the defendant drew the impeaching inconsistent statements because the consistent statements demonstrated that the inconsistencies were a minor part of an otherwise consistent account); United States v. Lujan, 936 F.2d 406, 411 (9th Cir.1991) (held that statements were admissible because defendants "opened the door" by cross-examining the declarant about her prior statements); United States v. Stuart, 718 F.2d 931, 934 (9th Cir.1983) (defendant "opened the door" for prior consistent statements to come in by examining the agent about the declarant's prior inconsistent statements made during the same interview); United States v. Rinn, 586 F.2d 113, 119-20 (9th Cir.1978) (where defendant opens up the subject matter of a declarant's prior statement to a law enforcement officer for the purpose of impeaching the declarant's credibility, the Government may cross-examine the law enforcement officer with respect to other statements made by the declarant at the time), cert. denied, 441 U.S. 931, 99 S.Ct. 2051, 60 L.Ed.2d 659 (1979).[4]
 
 
 78
 After a witness has been impeached with prior inconsistent statements,[5] we have admitted the entire conversation or document from which the impeachment statements were drawn if it has " 'significant probative force bearing on credibility apart from mere repetition' * * * by plac[ing] the inconsistencies * * * in a broader context, demonstrating that the inconsistencies were a minor part of an otherwise consistent account." Payne at 1471 (quoting U.S. v. Miller, 874 F.2d 1255, 1274 (9th Cir.1989)) (citing United States v. Pierre, 781 F.2d 329, 333 (2nd Cir.1986)).[6] "The opposing party may not pick and choose among prior statements to create an appearance of conflict and then object when this appearance is rebutted by means of a fuller version of the same prior statements." United States v. Tarantino, 846 F.2d 1384, 1411 (D.C.Cir.), (witness "was merely asked to confirm the remainder of the prior statements already introduced on cross-examination, in order to place those statements in context"), cert denied, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). However, where other hearsay statements from the conversation or document fail to clarify or provide context to the inconsistent statements drawn from the conversation or document they may be irrelevant[7] and thus inadmissible.[8] See, e.g., Miller, 874 F.2d at 1274 (district court properly excluded prior consistent statements where "prior statements in no way help to explain or amplify the inconsistent statement with which she was impeached"); United States v. Dennis, 625 F.2d 782, 797 (8th Cir.1980) (affirmed district court's refusal to allow prior statements made before a grand jury even though opposing counsel impeached the witness with prior inconsistent statements from the same grand jury testimony because "[a] request to introduce the entire extrajudicial statement is properly denied where all the prior statements related to impeachment had been presented to the jury and the prior statements would be mere repetition.").[9]
 
 
 79
 Accordingly, admissibility under the "opened door" rationale concerns two issues: whether Collicott impeached Zaidi through prior inconsistent statements which were drawn from a larger conversation; and, if so, whether the remaining hearsay statements from her conversation with Kehl clarify or provide context to the inconsistent statements, such that they become relevant and thus admissible for a purpose other than to prove the truth of the matters asserted therein.
 
 
 80
 Zaidi testified at trial that she did not remember making any statements to Kehl at the time of Collicott's arrest. Zaidi's answer that she did not remember having made a prior statement is as adequate a foundation for impeachment as a flat denial. United States v. Billue, 994 F.2d 1562, 1566 (11th Cir.1993) (citing Williamson v. United States, 310 F.2d 192, 199 (9th Cir.1962)), cert. denied, 510 U.S. 1099, 114 S.Ct. 939, 127 L.Ed.2d 230 (1994). "[T]he making of the previous [inconsistent] statements may be drawn out on cross-examination of the witness himself, or if on cross-examination the witness has denied making the statement, or has failed to remember it, the making of the statement may be proved by another witness." United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991) (internal quotation omitted) (emphasis added), cert. denied, 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). Therefore, Collicott properly impeached Zaidi's trial testimony by eliciting Zaidi's prior inconsistent statement that, after Collicott's arrest, she did, in fact, tell Kehl that a man arrived at the motel room between 12:00 a.m. and 1:00 a.m. and transacted a drug deal. By introducing a portion of the conversation between Zaidi and Kehl, Collicott "opened the door" to other statements from that conversation which clarify or provide context to Zaidi's prior inconsistent statements.
 
 
 81
 However, the other statements from Zaidi's conversation with Kehl do not clarify or provide context to her inconsistent statement introduced by Collicott.[10] In fact, those statements merely augment the inconsistency brought out by Collicott, as well as impeach Zaidi's credibility further by showing that she had a very detailed conversation with Kehl, in contrast to her testimony at trial that she could not remember her conversation with Kehl. We fail to see how these statements are offered for any non-hearsay purpose rather than to prove the truth of the matters they assert.[11] Consequently, the trial court erred in admitting Zaidi's out-of-court statements under the "opened door" rationale.
 
 B. Principle of Completeness Under Rule 106
 
 82
 Although the Government relies on the "opened door" rationale for admission of Zaidi's out-of-court statements to Kehl, we cannot discern from the trial court record whether the district court judge admitted Zaidi's out-of-court statements under the "opened door" rationale or the Principle of Completeness under Rule 106. Thus, we must address applicability of the Principle of Completeness under Rule 106, which is intimately related to the "opened door" rationale. Rule 106 provides:
 
 
 83
 When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
 
 
 84
 The Advisory Committee Notes state, in relevant part:
 
 
 85
 The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial. * * * For practical reasons, the rule is limited to writings and recorded statements and does not apply to conversations.
 
 
 86
 Rule 106, Advisory Committee Notes. The rule of completeness requires that a full document or set of documents be introduced: "[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible * * *." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172, 109 S.Ct. 439, 451, 102 L.Ed.2d 445 (1988). The trial judge's decision to admit evidence under the rule of completeness is reviewed for an abuse of discretion. United States v. Dorrell, 758 F.2d 427, 434 (9th Cir.1985).
 
 
 87
 We find that Zaidi's statements were not admissible under Rule 106 for three reasons. First, in textual form, Rule 106 is inapplicable to the present action because no writing or recorded statement was introduced by a party.[12] Second, "Rule 106 'does not compel admission of otherwise inadmissible hearsay evidence' " Phoenix Associates III v. Stone, 60 F.3d 95, 103 (2nd Cir.1995) (quoting United States Football League v. National Football League, 842 F.2d 1335, 1375-76 (2nd Cir.1988)); see also United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir.1981) (court did not abuse its discretion in excluding evidence under Rule 106 because it was irrelevant and inadmissible hearsay); United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir.1996) (Rule 106 does "not render admissible the evidence which otherwise is inadmissible under hearsay rules").[13] Because Zaidi's out-of-court statements to Kehl do not fall within an exception to the hearsay rule, they are inadmissible, regardless of Rule 106. Third, the purpose of Rule 106 would not be served if Zaidi's statements were admitted because there was no concern in this case that Collicott introduced a misleadingly-tailored snippet from Zaidi's statement to Kehl. Rather, by testing Zaidi's ability to recall the time of Luis' visit, Collicott merely cast doubt on Zaidi's accuracy and reliability as a witness. Consequently, in contravention of Rule 106, the complete statement did not serve to correct a misleading impression of a prior statement created by taking Zaidi's comments out of context. See Mueller & Kirkpatrick Federal Evidence § 44 (1994) ("it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them.").
 
 
 88
 C. Past Recorded Recollection Under Rule 803(5)
 
 
 89
 Finally, in an apparent last ditch effort to advance some applicable legal theory, the Government grasps at the legal straw that Zaidi's statements were admissible as a past recorded recollection under Fed.R.Evid. 803(5). Rule 803(5) allows a memorandum or record of an event to be read into evidence where (1) the witness once had knowledge about the matters in the document, (2) the witness now has insufficient recollection to testify fully and accurately, and (3) the record was made or adopted by the witness at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly. Rule 803(5).
 
 
 90
 However, the Government cannot satisfy the basic foundational elements of Rule 803(5). There simply is no evidence that Zaidi adopted Kehl's report as her own recorded recollection nor did she vouch for its accuracy. Therefore, Rule 803(5) provides no basis for admitting Kehl's testimony regarding Zaidi's statements. For all these reasons, the trial court erred in admitting the testimony.
 
 II. Harmless Error Analysis
 
 91
 Nonconstitutional errors are harmless unless the reviewing court has grave doubt whether the erroneously admitted evidence substantially affected the verdict. United States v. Crosby, 75 F.3d 1343, 1349 (9th Cir.1996). This standard is the same as the "fair assurance" standard. Id. We conclude that the improperly admitted evidence so tainted Collicott's verdict as to warrant a new trial.
 
 
 92
 As discussed above, Kehl's testimony regarding Zaidi's out-of-court statements was not admissible under Rule 801(d)(1)(B), the "opened door" rationale, Rule 106, or Rule 803(5). Consequently, the Government enjoyed a windfall of inadmissible evidence which bolstered its contention that Collicott engaged in a drug transaction and which suggested that Collicott was heavily involved in local drug distribution networks. Perhaps most importantly, Zaidi's detailed statements to Kehl impressed upon the jury that "Luis" existed and did enter and exit the motel room, even though he was never seen by a trained surveillance team and Zaidi made these statements with a significant motive to lie about who was involved in the alleged drug deal, as well as who owned the drugs.
 
 
 93
 Zaidi's inadmissible statements were critical to the jury's determination of the purchase and ownership of the drugs. Although not constituting prosecutorial misconduct which would bar retrial under the Double Jeopardy Clause, Oregon v. Kennedy, 456 U.S. 667, 675-76, 102 S.Ct. 2083, 2089-90, 72 L.Ed.2d 416 (1982), the Government's overkill went to the heart of this case. Consequently, we cannot conclude that the error was more likely than not harmless. Accordingly, we must reverse and remand this case for a new trial.[14]
 
 
 94
 REVERSED and REMANDED FOR NEW TRIAL.
 
 
 
 *
 The Honorable Robert E. Jones, United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 Rule 609(b) concerns the admissible period of time from which criminal convictions may be used for impeachment. We assume counsel intended to refer to Rule 608(b) which applies to the admissibility of specific instances of conduct used to attack or support the credibility of a witness. Nevertheless, Rule 608(b) is also inapplicable here
 
 
 [2]
 Some have advocated alternatives to the utilization of sidebar conferences for review of evidentiary matters. See Rafeedie, The Conduct of Trials, A Neglected Area of Judicial Reform, 23 Sw.U.L.Rev. 205 (1994); Rafeedie, Speedier Trials, 21 No.1 Litig. 6 (1994)
 
 
 [3]
 Unfortunately, however, the cases cited for this proposition confuse the relationship between the "opened door" rationale and Rule 801(d)(1)(B) which only applies where a witness has been impeached by an express or implied charge of recent fabrication or improper motive, which the Government concedes is not present in this case
 
 
 [4]
 Although these cases permitted the introduction of prior statements after the witness was impeached, there is some support for the Government's proposition that the witness need not even be impeached with statements from the conversation to allow admission of the entire conversation. For instance, in United States v. Parr-Pla, 549 F.2d 660 (9th Cir.), cert. denied, 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977), after the appellant was arrested, he admitted guilt to an FBI officer during a conversation, and regardless of the Miranda rule, the court admitted the entire conversation because "appellant's counsel opened the door to admission of the full conversation by asking the FBI agent on cross-examination whether appellant had made a particular statement in the course of the conversation." Id. at 663. However, Parr-Pla does not provide enough facts to discern whether appellant impeached the FBI agent with statements from the conversation or merely inquired into the conversation. Moreover, unlike the present action, Parr-Pla involved party-opponent admissions. Therefore, in the absence of a reasoned analysis and analogous facts, we decline to rely on Parr-Pla in this case
 
 
 [5]
 Note that impeachment with prior inconsistent statements is only one of five main forms of impeachment of the credibility of a witness, which include: (1) introducing prior inconsistent statements, (2) showing bias, (3) attacking the witness' character for truthfulness, (4) attacking the perception or memory of the witness, and (5) contradicting the witness' testimony. Strong, McCormick on Evidence § 33 (1992)
 
 
 [6]
 Other circuits adhere to a similar rule but do not refer specifically to the "opened door" rationale. See United States v. Castillo, 14 F.3d 802, 806 (2nd Cir.) (use of prior consistent statements " 'is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement. It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principle of completeness, though not a precise use of Rule 106.' ") (quoting United States v. Pierre, 781 F.2d 329, 333 (2nd Cir.1986)), cert. denied, 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994); Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 730 (6th Cir.1994) (" 'use of prior consistent statements for rehabilitation is particularly appropriate where, as here, those statements are part of a report or interview containing inconsistent statements which have been used to impeach the credibility of the witness. Prior consistent statements which are used in this matter [sic] are relevant to whether the impeaching statements really were inconsistent within the context of the interview, and if so, to what extent. This rehabilitative use of prior consistent statements is also in accord with the principle of completeness promoted by Rule 106.' ") (quoting United States v. Harris, 761 F.2d 394, 399-400 (7th Cir.1985))
 
 
 [7]
 When referring to the relevance of hearsay statements which are used to provide context to impeachment statements, we mean relevant for a purpose other than to prove the truth of the matter asserted in the out-of-court statements. Obviously, many of the statements made by Zaidi to Kehl about the drug transaction are relevant to the substantive issues in this case but are inadmissible hearsay if offered to prove the truth of the matter asserted in the statement. See Rules 801, 802. However, if they become relevant for a purpose other than their truth, such as to clarify and provide context to other statements from the same conversation, then they may be admissible
 
 
 [8]
 The Government would have us allow the admission of the entire conversation or document, regardless of its relevance, whenever a party inquires into part of the conversation or document. We decline to extend the "opened door" rationale so far. The remaining hearsay statements will only be admissible if they have relevance for a purpose other than to prove the truth of the matters asserted in the statements
 
 
 [9]
 Though not a strict application of Rule 106 (partial codification of the Principle of Completeness), we have applied the "opened door" rationale, in accordance with the Principle of Completeness, in the arena of impeachment with prior inconsistent statements from a conversation or document. We recognize that Rule 106, which we discuss below, expresses similar concerns regarding inquiry into portions of documents, but that Rule is distinct from the more narrow inquiry under the "opened door" rationale which we have applied only to impeachment by prior inconsistent statements which constitute a portion of a conversation or document
 However, we also are aware that Judge Weinstein and Professor Berger recommend abolishing the confusing distinction between the "opened door" rationale and the Principle of Completeness:
 Often the courts have stated, in permitting the adversary to develop the matter either on cross-examination or, as part of his own case, that the proponent "opened the door" to its admission. This merely serves to confuse the issue since:
 [t]he doctrine of "opening the door" is an application of the "principle of completeness," that is, if one party to litigation puts in evidence part of a document, or a correspondence or a conversation, which is detrimental to the opposing party, the latter may introduce the balance of the document, correspondence or conversation in order to explain or rebut the adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary.
 The phrase "opening the door," has been used with such a lack of discrimination, that it would probably be well to eliminate it. * * * Only if the evidence by one party needs to be met or explained away by the other side does its mere introduction provide independent warrant for the introduction of other evidence.
 J. Weinstein and M. Berger, Weinstein's Evidence, p 106 at 106-18 (1986) (quoting United States v. Corrigan, 168 F.2d 641, 645 (2nd Cir.1948)).
 
 
 [10]
 Zaidi's other statements from her conversation with Kehl are the following: (1) Luis "immediately tossed [Zaidi] a bag of cocaine," (2) "she began to rock it up, make it into crack cocaine," (3) Collicott and Luis talked about various drug transactions, (4) Collicott stated that he wanted to have additional drugs fronted to him, (5) Collicott gave money to Luis which "he spread out on the floor and was counting while they were talking," (6) Zaidi "overheard something to the effect of $11,000 worth of drugs had been bought in the previous week by the Collicott family," (7) Zaidi told Kehl that Luis "was arrested in Spokane earlier in the year for possessing or dealing drugs," and (8) after Collicott arrived at the motel, he "was making phone calls trying to contact [Luis]." Tr. 329-30
 
 
 [11]
 In fact, the Government stated at oral argument that the statements were relevant to show that Collicott did engage in a drug deal at the motel. As explained above, these statements are not admissible to prove the truth of the matter they assert, but rather may only be introduced for a non-hearsay purpose
 Because we conclude that the statements are not admissible under either Rule 801(d)(1)(B) or the "opened door" rationale, we need not decide whether, in light of Tome, this circuit permits statements, which are admissible under the "opened door" rationale but not under Rule 801(d)(1)(B), to be used as substantive evidence even though the "opened door" rationale is distinct from Rule 801(d)(1)(B). Compare Payne, 944 F.2d at 1471 ("this circuit considered the issue and rejected any distinction between consistent statements offered for substantive and rehabilitative purposes. We held that 'a prior consistent statement offered for rehabilitation is either admissible under Rule 801(d)(1)(B) [and comes in as substantive evidence] or it is not admissible at all.' ") (quoting Miller, 874 at 1273) with Engebretsen 21 F.3d at 730 ("[t]he trial court has greater discretion to admit prior consistent statements to rehabilitate an impeached witness, by clarifying or explaining his prior statements alleged to be unreliable, than if the statements are offered for their truth under Rule 801(d)(1)(B).").
 
 
 [12]
 However, this by itself, is not dispositive because other circuits have held that "Fed.R.Evid. 611(a) grants district courts the same authority regarding oral statements which [Rule] 106 grants regarding written and recorded statements." United States v. Li, 55 F.3d 325, 329 (7th Cir.1995); see also United States v. Mussaleen, 35 F.3d 692, 696 (2nd Cir.1994). Rule 611(a) mandates that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."
 
 
 [13]
 But see United States v. Sutton, 801 F.2d 1346, 1368-69 (D.C.Cir.1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously.")
 
 
 [14]
 Although we reverse on Collicott's first assignment of error we address the remaining three assignments of error to help guide the trial court on remand. See, e.g., United States v. Hairston, 64 F.3d 491, 493 (9th Cir.1995) (addressing other issues "which are likely to arise on a new trial.")
 First, the trial court properly allowed the Government to impeach Collicott's testimony that "[he] wouldn't know how to begin to sell drugs like that," by inquiring into his 1988 drug conviction for delivery of a controlled substance. The prior conviction became probative after Collicott testified that he would not know how to sell such drugs. We cannot say that the trial judge abused his discretion in admitting such evidence to impeach Collicott's testimony.
 Second, we need not consider whether, in the interests of justice, Zaidi's perjured testimony requires a new trial because we remand for a new trial on other grounds and Zaidi's perjury is not likely to arise on retrial. Likewise, Collicott's final assignment of error regarding the Government's failure to disclose Zaidi's prior involvement in drug deals in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is also not likely to reoccur on remand; thus, we decline to address the issue here.