

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>          Plaintiff - Appellee, <br><br>    v. <br><br> WAYNE A. MOUNTS, <br><br>          Defendant - Appellant. | No. 12-10026 <br><br> D.C. No. 2:10-cr-00464-KHV-2 <br><br><br> MEMORANDUM[*] |
| UNITED STATES OF AMERICA, <br><br>          Plaintiff - Appellee, <br><br>    v. <br><br> GINO CARLUCCI, AKA Gene David Odice, <br><br>          Defendant - Appellant. | No. 12-10425 <br><br> D.C. No. 2:10-cr-00464-KHV-1 |

Appeal from the United States District Court
for the District of Arizona
Kathryn H. Vratil, Chief District Judge, Presiding

Argued and Submitted July 9, 2014

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

San Francisco, California

Before: FERNANDEZ, N.R. SMITH, and CHRISTEN, Circuit Judges.

Wayne Mounts and Gino Carlucci appeal from convictions relating to a money laundering scheme. Because the parties are familiar with the facts of this case, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm the district court's rulings and judgment.

Sleeping Jurors

The issue of the district court's handling of the first note about sleeping jurors is waived. *See United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). Defendants participated in discussions about how to respond and specifically objected to the district court's suggestion to designate the jurors as alternates. Pursuant to those discussions, the district court agreed to take other steps to help the jurors stay alert.

The district court's response to the second note was not plainly erroneous. "The trial judge has considerable discretion in determining whether to hold an investigative hearing on allegations of jury misconduct and in defining its nature and extent." *United States v. Barrett*, 703 F.2d 1076, 1083 (9th Cir. 1983). Under the facts here, defendants have not demonstrated that, based on controlling authority, it would have been "clear or obvious" that the district court had an

2

obligation to *sua sponte* question Juror No. 8 or designate this juror as an alternate. *See United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011). This is especially true given that defendants' counsel received a copy of the second note and failed to raise the issue.

Immunity

Carlucci was required to cooperate with the Stem Genetics prosecution pursuant to a plea agreement in that case. That such cooperation included discussions touching on the present case does not establish that the government promised immunity from prosecution in this case. Nor does the testimony of Jeffrey Wright show that prosecutors promised immunity. At most, there may have been an implied understanding between the parties that the government would be prohibited from using information that Carlucci divulged or statements that he made specifically in furtherance of his cooperation on the Stem Genetics matter. Carlucci has not shown that the government actually used evidence against him that was obtained from his cooperation in 2009 to prepare for the Stem Genetics trial. Carlucci's discussions with the government in February 2005 were not in furtherance of his required cooperation under the 2004 plea agreement, but were governed by a separate proffer agreement. Carlucci did not show that he had

3

immunity for the conduct underlying the convictions in this case, or that the government committed prosecutorial misconduct.

Text Messages

Carlucci only objected to the introduction of the text messages between himself and Robert Garback under the rule of completeness. We review the rule of completeness issue for an abuse of discretion, *United States v. Collicott*, 92 F.3d 973, 978, 983 (9th Cir. 1996), and Carlucci's other arguments for plain error, *United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990).

First, Carlucci's "rule of completeness" objection fails because this is a rule of admission, not exclusion. *See Collicott*, 92 F.3d at 983; *United States v. Soulard*, 730 F.2d 1292, 1301 (9th Cir. 1984). Second, Carlucci's contention that the text messages lacked foundation is not supported by argument, Fed. R. App. P. 28(a)(8), and therefore falls far short of meeting the plain error standard. Third, Carlucci's argument that admission of the messages violated the Confrontation Clause fails the plain error standard because Carlucci was not prevented from cross-examining Garback about the texts, including why some of them were apparently deleted. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

Brandon Valero's Testimony

4

Carlucci raises several arguments about the introduction of Valero's out-of-court statements at trial.

First, he claims that no hearsay exception applied to the introduction of statements made to Agents DiSalvo and Koritala. "We review the trial court's decision to admit evidence under a hearsay exception for an abuse of discretion." *People of Territory of Guam v. Cepeda*, 69 F.3d 369, 371 (9th Cir. 1995). The admission of Valero's out-of-court statements was not an abuse of discretion because the statements fell generally under the hearsay exception for statements "of a declarant's then-existing state of mind," including "emotional, sensory, or physical condition." Fed. R. Evid. 803(3). Carlucci does not argue that the government admitted any specific statements that exceeded the state of mind exception. Even assuming the district court erred in admitting some of these statements, any error was harmless. Carlucci was not convicted on the witness tampering count. While the district court did enhance Carlucci's sentence for obstruction of justice, Valero's own grand jury testimony and the evidence of the anonymous fax provided an adequate basis for an obstruction of justice finding.

Second, Carlucci did not raise a Confrontation Clause argument to the district court, so we review this argument for plain error. *United States v. Gomez*, 725 F.3d 1121, 1125 (9th Cir. 2013). On this record, it would not have been clear

5

or obvious that Carlucci lacked an adequate prior opportunity to cross-examine Valero about the statements he made to Agents DiSalvo and Koritala. This argument does not meet the plain error standard.

Third, Valero's grand jury statements were not admitted for the truth of the matter asserted but for impeachment purposes under Federal Rule of Evidence 804(b)(1). The Supreme Court has recognized that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

Marital Communications Privilege

Because Carlucci's counsel expressly disclaimed an objection regarding marital privilege at the time Tracy Carlucci's testimony was introduced in the district court, this argument is waived. *See Perez*, 116 F.3d at 845; *United States v. Vo*, 413 F.3d 1010, 1017 (9th Cir. 2005) (citing *United States v. Figueroa-Paz*, 468 F.2d 1055, 1057 (9th Cir. 1972)).

Application of Guidelines Section 3C1.3

Carlucci concedes that plain error review applies to this argument. Even if United States Sentencing Guidelines § 2J1.7 should have been applied to Carlucci instead of § 3C1.3, the earlier provision was substantively identical. *See* U.S.S.G.

6

§ 2J1.7 (2003). Carlucci provides no reason to think that application of § 3C1.3 created a meaningful risk of a higher sentence. *See Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013). He has therefore not met his burden of showing that any error by the district court affected his substantial rights or "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Aparicio*, 663 F.3d at 428 (citations and internal quotation marks omitted).

Guidelines § 3C1.3 was applicable to Carlucci. Even if the provision was only applicable to the money laundering conspiracy, the evidence supports the district court's conclusion that the conspiracy continued beyond December 2004. Application of the enhancement would not be precluded even if Carlucci's actions in furtherance of this scheme took place before that date. *See United States v. Inafuku*, 938 F.2d 972, 973 (9th Cir. 1991) ("Conspiracy is a continuing offense, which is charged and punished as one crime from beginning to end."). Carlucci does not argue that he affirmatively withdrew from the conspiracy before 2005. Because conspiracy is a continuing offense, evidence that the conspiracy was carried on by any party past December 2004 demonstrates that the crime for which Carlucci was convicted was not complete by that date. Moreover, almost by definition, Carlucci's concession that "the dates of the conspiracy are not clear"

means that the district court did not commit clear error as to the dates of the conspiracy.

<u>Application of Guidelines Section 2B1.1(b)(1)(I)</u>

Carlucci concedes that inclusion of the $20,000 flight alone would raise the loss attributable to his crimes above $1,000,000. The plain language of the Guidelines provision does not preclude the attribution of losses that may have been ill-gotten in the first place. Sentencing goals include deterrence and addressing culpability, and so neither of the two rationales for the common-law defense of *in pari delicto* excuse Carlucci's conduct here. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). Carlucci cannot show that the $20,000 loss from the flight was not properly counted under the Guidelines, so the loss attributable to his crimes exceeds $1,000,000.

<u>Restitution for Victims</u>

Because Carlucci did not object in district court on the basis he advances here, plain error review applies. "In light of the remedial purposes underlying the [Mandatory Victims Restitution Act], our precedent grants district courts a degree of flexibility in accounting for a victim's complete losses." *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (citation and internal quotation marks

omitted). The district court must establish facts underlying restitution by a preponderance of the evidence. *Id.*; 18 U.S.C. § 3664(3).

It would not have been clear or obvious to the district court that the MVRA did not permit the investors in Flickinger's scheme to be treated as Carlucci's victims as well. *See* 18 U.S.C. § 3663A(a)(2). The district court's conclusion that Carlucci essentially made Flickinger's victims his own by unlawfully obtaining their money was not plainly erroneous.

Obstruction of Justice

Contrary to Carlucci's assertion, the district court's application of Guidelines § 3C1.1 was based primarily on Carlucci's conduct, not on the actual effect of this conduct on Valero. Evidence concerning an anonymous fax sent to Valero, and Valero's reaction to it, satisfied the preponderance of the evidence standard for applying this enhancement. *See United States v. Guzman-Mata*, 579 F.3d 1065, 1072 (9th Cir. 2009).

Disparate Sentence

The district court found that "Flickinger and [Carlucci] stand in dramatically different circumstances in terms of their role in this case." Carlucci has not shown that this finding was clearly erroneous. *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001). Accepting this finding as true, the district court did not abuse its

9

discretion when it arrived at Carlucci's sentence after weighing the multiple considerations described in 18 U.S.C. § 3553(a).

Carlucci's Lack of Remorse

Carlucci cites no controlling authority supporting his argument on this issue. The argument is directly foreclosed by *United States v. Smith*, 424 F.3d 992, 1016–17 (9th Cir. 2005).

Conclusion

Based on the foregoing, we **AFFIRM** the district court's judgment as to all issues in these appeals.