**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    15-10302 |
| Plaintiff-Appellee, | D.C. No. 3:12-cr-00144-EMC-1 |
| v. | |
| MIKAL XYLON WILDE, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted December 13, 2016
San Francisco, California

Before:  BERZON and MURGUIA, Circuit Judges, and BLOCK,[**] District Judge.

In the summer of 2010, Mikal Xylon Wilde hired three men (Christopher Bigelow, Francisco Lopez-Paz, and Roberto Juarez-Madrid) to work on his marijuana farm. In the ensuing months, the men's living and work conditions

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

deteriorated because Wilde confiscated their phones, required them to perform onerous manual labor, neglected to replenish their food, and failed to pay them as agreed.

On August 25, 2010, the men contacted Wilde's business partner, Tom Tuohy, and threatened to report the marijuana operation if they did not receive payment. When Wilde discovered that the men had complained to Tuohy, he was angry but promised to pay and escort them back to the city. That night, Wilde went to the men's trailer and shot at all three men, killing Juarez-Madrid and severely injuring Lopez-Paz in the face. Bigelow and Lopez-Paz escaped and hid in the woods nearby.

The next morning, Lopez-Paz went to a fire department, gave a statement to law enforcement, and was escorted to a hospital. Bigelow, meanwhile, encountered a jogger, explained his situation, and asked for help. The jogger found assistance for Bigelow, who then gave his statement to officers.

Before trial, Tuohy testified in front of a grand jury and mentioned an email that he had received from Wilde, asking whether anyone would miss Lopez-Paz if he vanished. Experts from the FBI, Yahoo, and Microsoft could not locate the email but acknowledged that it could have been deleted. Tuohy also testified that

Wilde had the password to Tuohy's email account and that Wilde's sister visited Tuohy after the murder and asked Tuohy to delete all his emails.

A jury convicted Wilde of first-degree murder and several drug offenses. The court sentenced Wilde to life plus thirty-five years. Wilde appeals three evidentiary rulings and one jury instruction. We affirm.

**1.** The district court did not abuse its discretion in allowing Tuohy to testify about the missing email. *See* Fed. R. Evid. 1008. The court exercised its gate-keeping function under Rule 104(b) and determined a reasonable jury could conclude that the disputed email existed. *See Huddleston v. United States*, 485 U.S. 681, 690 (1988) (holding that under Rule 104(b), the "court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence").

The district court did not commit plain error by not instructing the jury that it should find preliminary facts about the email's existence before attributing any weight to the email's contents. Even if the district court did err by failing to instruct, Wilde has not shown that such error contravened clearly settled law. *See United States v. Greer*, 640 F.3d 1011, 1019 (9th Cir. 2011) (failure to instruct the jury was not plain error where "no circuit has held that [the disputed] instruction is required and at least one circuit has held that it is not"). Moreover, because the

testimony made clear that there was no record that the contested email was sent or received and its existence was hotly contested, no rational juror would rely on its alleged contents if he or she did not first conclude that it had in fact existed; any instruction to that effect thus could not have made a difference. Finally, the record contains substantial evidence of premeditation, so any error did not prejudice Wilde. *See United States v. Torralba-Mendia*, 784 F.3d 652, 662 (9th Cir. 2015) (holding that plain error did not affect the outcome where there was "a substantial amount of evidence, aside from [the erroneously admitted testimony]").

**2.** The district court did not abuse its discretion in admitting prior consistent statements by Bigelow and Lopez-Paz. *See* Fed. R. Evid. 801(d)(1)(B). Bigelow's prior consistent statement was admissible because the defense cross-examined him extensively with parts of the statement. *See United States v. Collicott*, 92 F.3d 973, 979–80 (9th Cir. 1996) ("[T]his Circuit has historically allowed a party to introduce prior statements because they were part of the same conversation or document from which impeaching inconsistent statements were drawn.").

Lopez-Paz's prior consistent statement was admissible because the defense opened the door by questioning him about a U non-immigrant status visa he received from the government. *See Arizona v. Johnson*, 351 F.3d 988, 999 (9th Cir.

2003) (holding that a charge of improper motive based on receipt of immigration benefits opens the door to prior consistent statement).

**3.** The district court's decision to admit Bigelow's out-of-court statement to the jogger did not result in prejudice because Bigelow, Lopez-Paz, and even Wilde himself testified at trial about the same events that Bigelow relayed to the jogger. Also, Bigelow's prior consistent statement concerning those same events was, as we have explained, properly admitted. *Woods v. Sinclair*, 764 F.3d 1109, 1125-26 (9th Cir. 2014) (finding no prejudice where the hearsay statements "were cumulative of the testimony by [another witness]" who testified to the same event); *United States v. Sherlock*, 962 F.2d 1349, 1365 (9th Cir. 1989) (finding no prejudice where "[a]t least two other witnesses testified" to the same events as the hearsay declarant).

**4.** The district court properly instructed the jury that in determining the amount of marijuana, all marijuana plants should be included in the quantity, regardless of sex. *See United States v. Traynor*, 990 F.2d 1153, 1160 (9th Cir. 1993), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) ("It is not obviously irrational for Congress not to distinguish between male and female marijuana plants, regardless of THC level."). The challenged

instruction does not violate Wilde's due process rights, and therefore, the district court did not abuse its discretion in giving the instruction.

**AFFIRMED**.

USA v Mikal Xylon Wilde   15-10302

BERZON, Circuit Judge, concurring:

Federal Rule of Evidence 1008 states that in a jury trial, "the jury determines – in accordance with [Fed. R. Evid.] 104(b) – any issue about whether . . . an asserted writing, recording or photograph ever existed."  In my view, Rule 1008's requirement that "the jury determine[]" whether or not an asserted writing ever existed probably contemplates that in this context, the jury *as a whole* find the predicate facts by a preponderance of the evidence.  If that is correct, then an instruction to that effect – and, in all likelihood, a special verdict form – would be needed.

A "jury determination" generally refers to facts found by the *entire* jury. *See, e.g., Kansas v. Marsh*, 548 U.S. 163, 165-66 (2006) (examining whether state statute requiring imposition of the death penalty where "the . . . jury determines that aggravating evidence and mitigating evidence are in equipoise" violated the Constitution); *Apprendi v. New Jersey*, 530 U.S. 466, 476–77 (2000) (the Fourteenth Amendment entitles a state criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.") (citing *United States v. Gaudin*, 515 U.S. 506, 510 (1995)); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 342 (1998) (right to a jury trial includes the "right to a jury determination of the amount of statutory

damages.").

But the defense has never argued, including in this court, that a determination by the jury as a whole was required. As a result, the parties have not briefed whether the Rule in fact contemplates a predicate determination by the jury as a body. If, as the defendant instead has asserted, it is *each* juror who was supposed to decide on the predicate fact (the existence of the email) before relying on its content, then there was no need for an instruction. Any juror would necessarily have to come to a conclusion about Tuohy's veracity before factoring the email into his or her premeditation conclusion. With those observations, I concur in the memorandum disposition in full.