UNITED STATES of America, Plaintiff–Appellee,

v.

Nagesh SHETTY, Defendant–Appellant.

No. 96–50583.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1997.

Filed Nov. 20, 1997.

Kimberly A. Dunne, Assistant United States Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Alan M. Dershowitz, Dershowitz & Eiger, Cambridge, MA, for Defendant–Appellant.

Before HALL and T.G. NELSON, Circuit Judges, and WINMILL,* District Judge.

* Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

T.G. NELSON, Circuit Judge.

Nagesh Shetty was convicted of subscribing to false tax returns in violation of 26 U.S.C. § 7206(1) for the 1987, 1988 and 1989 tax years. Because Shetty's trial began 551 days after his initial appearance, he contends the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, was violated. Shetty seeks reversal of his conviction and dismissal of the indictment.

In the alternative, Shetty challenges the Government's use of the "net worth method" to determine his taxable income during the trial and for purposes of sentencing. He also challenges the district court's enhancement of his sentence under Section 3C1.1, United States sentencing guidelines, for "obstructing or impeding the administration of justice" based on his wife's transfer of $280,000 to a Swiss bank account. Shetty requests that his sentence be vacated and that his case be remanded for resentencing.

We affirm Shetty's conviction and sentence.

## FACTS AND PRIOR PROCEEDINGS

Nagesh Shetty, a cardiologist who came to the United States from India in 1973 and became a naturalized citizen in 1978, practices medicine in Southern California. Beginning in 1980, Shetty went to H & R Block for assistance in filing joint tax returns with his wife. The same H & R Block preparer assisted Shetty from 1980 to 1992.

In 1990, Shetty's 1987 and 1988 tax returns were selected for an audit by the IRS. The audit was later expanded to include 1989, and when the revenue agent performing the audit suspected that Shetty had fraudulently filed false tax returns, the IRS commenced a criminal investigation. The investigation revealed that Shetty was the sole supporter of his wife and four children and that he was in charge of the finances in his home and at his office. Although Shetty reported gross receipts of $357,220 in 1987, $356,249 in 1988, and $431,894 in 1989, he reported a taxable income of $15,687 in 1987, a *negative* taxable income of -$3,025 in 1988, and a taxable income of $2,064 in 1989. During that same time period Shetty lived in a nice home, purchased a second home as an investment, bought two new cars, including a Mercedes, and amassed a substantial savings.

In its case, the Government claimed Shetty perpetrated his tax fraud by concealing income from his H & R Block tax preparer when he (1) omitted income from seven insurance carriers, and (2) misrepresented that he accepted insurance payments as payment in full and that he received no payments directly from patients. Shetty made similar misrepresentations to the IRS agent who conducted the audit of his 1987, 1988 and 1989 tax returns. In addition, he (1) claimed that he had amassed substantial savings by borrowing on credit lines, and (2) denied that he had purchased any property in 1988, until the agent confronted him with evidence of his purchase of a second home.

It was on December 3, 1991, that Shetty was notified that the IRS's civil audit was being converted to a criminal tax investigation. Less than three weeks after Shetty learned of the criminal tax investigation, his wife transferred $280,000 to a Swiss bank account.

After Shetty was indicted on three counts of subscribing to false tax returns in violation of 26 U.S.C. § 7201(1), he entered a plea of not guilty at his initial appearance on December 7, 1994. Due to a number of continuances, all of which were supported by stipulations of fact signed by the Government, defense counsel, and Shetty himself, the case did not go to trial until June 11, 1996.

Ten days prior to trial, Shetty filed a motion to dismiss the indictment claiming a violation of the Speedy Trial Act. The day before the trial began, the district court heard argument on the motion and orally denied it. Two days later, the court filed a twelve-page order which detailed its reasons for the denial. The court also denied Shetty's motion to reconsider.

Following a two-week trial, a jury convicted Shetty on all three counts. Thereafter, the district court sentenced Shetty to twenty-one months' imprisonment, a $40,000 fine, and ordered him released on bond pending resolution of this appeal.

## DISCUSSION

### I. *The Speedy Trial Act*

#### A. *The Standard of Review*

■ We review legal questions regarding the application of the Speedy Trial Act *de novo,* and factual findings for clear error. *United States v. Contreras,* 63 F.3d 852, 854–55 (9th Cir.1995); *United States v. Aviles–Alvarez,* 868 F.2d 1108, 1111 (9th Cir.1989).

#### B. *The Act in General and as Applied by the District Court*

Pursuant to the Speedy Trial Act, a defendant must be brought to trial within seventy days of the filing date of the indictment, or from the date of his appearance before a judicial officer, whichever is later. *See* 18 U.S.C. § 3161(c)(1). The Act sets forth several types of "excludable delay," which do not count toward the seventy-day limit. 18 U.S.C. §§ 3161(h)(1)–(8). For example, the district court may exclude delays caused by a continuance if the continuance is based on findings that the ends of justice served by the continuance outweigh the best interests of the public and the defendant in a speedy trial. *See* 18 U.S.C. § 3161(h)(8)(A).

In this case, Shetty made his initial appearance on December 7, 1994; was arraigned on December 12, 1994; and his trial was set for January 31, 1995. From December 7, 1994, until January 9, 1995, at which time the district court held a status conference, thirty-three days elapsed under the Speedy Trial Act. Thereafter, there were eight continuances of the trial. Shetty on his own or in conjunction with the Government requested six of these continuances. As of the hearing on Shetty's motion to dismiss, which was heard the day before his case went to trial, the Government submitted that "61 days . . . [had] passed on the speedy trial clock [and that] . . . nine days remain[ed]." Tr. at 47 (June 10, 1996).

On June 12, 1996, the district court filed a twelve-page order detailing its reasons for denying Shetty's motion to dismiss under the Speedy Trial Act, which read in part:

> [Shetty] stipulated to the findings required by this Court in determining excludable time [under 18 U.S.C. § 3161(h)(8)(A) ]. Based upon the parties [sic] representa-tions, the Court made findings that this time should be excluded under the Act.

Order Den. Def.'s Mot. to Dismiss Indictment, at 9 (June 12, 1996) (footnote omitted).

> It is important to note that while eighteen months have elapsed from [Shetty's] arraignment to his trial date, approximately 283 days of this period are directly attributable to [Shetty's] requests. Therefore, over half of the delay involved in this matter is neither at issue, nor disputed by [Shetty] in his motion.

*Id.* at 10 n. 9.

> As mentioned before, [a defendant] cannot waive the right to a speedy trial. However, at the same time, [a defendant] may not stipulate to certain findings and then later seek to attack a court's findings concerning excludable time based upon such stipulations. [Shetty] always stipulated to the continuances, never once challenging the Government's position or the Court's reasoning.

*Id.* at 12 (citations and footnote omitted).

#### C. *The Act as "Used" by the Defense*

In an effort to muster nine more days of nonexcludable time from the record to establish a violation of the Speedy Trial Act and obtain a reversal of his conviction, Shetty focuses on three of the six continuances to which he stipulated.

##### 1. *Continuance from June 6 to October 3, 1995.*

Following an informal status conference on May 22, 1995, the court granted a continuance of the trial which had been set to commence on June 6. On June 12, 1995, the parties filed a "Stipulation and Order Re[:] Excludable Time Under the Speedy Trial Act," and pursuant to that stipulation, the court subsequently entered an order on June 13, 1995, which continued the trial to October 3. Also by stipulation of the parties, the order entered by the court expressly found:

> [T]he ends of justice served by granting the requested continuance outweigh the best interests of the public and the defendant in a speedy trial, in that the failure to grant the continuance would deny the government continuity of counsel, and would

deny newly associated defense counsel a reasonable period of time to adequately prepare for trial.

Order Re[:] Excludable Time Under the Speedy Trial Act, filed June 13, 1995, ¶ 4 at 2. Shetty makes a variety of arguments related to this continuance, but we discuss only the two primary arguments emphasized on appeal.[1]

■ First, to substantiate his position that the trial was delayed due to court congestion, Shetty emphasizes that the district court's order expressly states that "[t]he court's next available trial date is October 3, 1995." *Id.* ¶ 3, at 1.

This argument does not establish a violation of the Speedy Trial Act. We note that the order entered by the district court was *drafted* and *proposed* by the parties themselves and submitted with their stipulation. And, while it is true that court congestion cannot serve as a basis for a continuance, *United States v. Engstrom,* 7 F.3d 1423, 1427 (9th Cir.1993), where a trial date is set and later changed at the request of the parties, district courts certainly cannot be required to reset cases in unworkable or "unavailable" time slots. Moreover, there is no indication in the record that the defense ever requested an earlier trial date or that it withdrew its stipulation to continue the trial to October 3, 1995. Absent notice that the defendant was withdrawing from the stipulation or requesting an earlier trial date, the district court had no reason to reset the trial on an earlier date.

■ In his second major argument related to this continuance, Shetty points out that on September 11, 1995, a status conference was held during which the district court ruled upon discovery motions filed by the defense. Contending that the time between September 11 and October 3, 1995, should not be excludable, Shetty essentially maintains that once the discovery motions were ruled upon, it was incumbent on the trial court to disregard the earlier stipulation of the parties, as well as its own order, and reset the trial on a

date earlier than October 3, 1995. More specifically, in his opening brief, Shetty states that "[t]here is no indication that counsel, who were both available for the conference, were unable to proceed on September 11th. The trial could have been scheduled for that date." (Brief of Appellant at 30.)

In hindsight and for purposes of arguing that the Speedy Trial Act was violated, the defense contends it was ready to try the case on September 11. This argument, if successful, might earn Shetty extra days of nonexcludable time under the Speedy Trial Act, but it completely discounts the realities associated with prosecuting, defending and conducting a criminal trial. Until September 11, 1995, the defense did not know the outcome of its discovery motions. Moreover, to call a jury, let alone witnesses, takes time. Had the court unexpectedly moved the trial date up from October 3 to September 11, 1995, counsel for both sides would likely have argued that they were being prejudiced and needed more time to prepare.

Under the circumstances, "the ends of justice served by the continuance [to the scheduled trial date of October 3, 1995] outweigh[ed] the best interest of the public and the defendant in [an earlier trial date]." 18 U.S.C. § 3161(h)(8)(A). In addition, there is no indication in the record that the defense withdrew its earlier stipulation to continue the trial until October 3, 1995, and/or requested an earlier trial date at any time following the outcome of the September 11 hearing and before the scheduled trial date of October 3, 1995. Absent notice that the defense was withdrawing from the stipulation or wanted an earlier trial date, the district court had no reason to reschedule Shetty's trial on an earlier date.

2. *Continuance from October 3 to November 28, 1995.*

■ When the district court advised counsel that the trial set on October 3 would have to trail another trial for one to two weeks,

1. In view of the entire record, we find either that Shetty's other arguments have been adequately addressed by the district court's Order Denying Defendant's Motion to Dismiss the Indictment, filed June 12, 1996, and its Minute Order filed

July 1, 1996 (incorporating Government's Opposition to Defendant's Motion to Reconsider, filed June 24, 1996); or that those arguments are unsupported by any authority and warrant no discussion.

leading to a variety of unavoidable delays, such as the unavailability of counsel and essential witnesses, the Government and Shetty jointly sought a continuance in a "Stipulation and Order Re[:] Continuance of Trial Date and Excludable Time Under the Speedy Trial Act." Subsequently, and pursuant to the stipulation of the parties, the district court entered an order continuing the trial.

Now, on appeal, the defense would like to go back and attribute the entire continuance to "calendar congestion" and treat the *entire* period as nonexcludable under the Speedy Trial Act. This argument once again ignores the fact that both Shetty and his counsel stipulated to the facts underlying the district court's findings of excludable time, and at *no* time, either orally or in writing, did they attempt to withdraw their stipulation and/or request an earlier trial date between October 3 and November 28. Therefore, based on the totality of the record before us, we find no violation of the Act with respect to this continuance.

3. *Continuance from April 16 to June 11, 1996.*

■ Pursuant to a "Stipulation Re: Continuance of Trial Date, Excludable Time Under the Speedy Trial Act, and Disclosure of Jury Panel" (RE 105–09), the district court continued the trial from April 16 to June 11, 1996. (RE 110–12.) This continuance receives the most attention from Shetty.

Approximately two weeks prior to the April 16 trial date, the Government requested that a deposition be taken of Connie Hansen, a witness who was scheduled for major surgery on April 11, 1996, for which she would require six to eight weeks of recuperation. Hansen had worked in Shetty's office and he did not want to give up his right to confront her in front of a jury. During the hearing on the motion to take Hansen's deposition, defense counsel specifically said, *"I'd be remiss if I didn't, on behalf of my client, request a continuance of the trial until that witness is available."* Tr. at 6 (April 4, 1996) (emphasis added). And, although the Government indicated it was willing to proceed to trial without Hansen, it *also* indicated that it would *"absolutely"* like to have her testify. *Id.* at 14–15 (emphasis added).

Ultimately, the district court determined that the trial should be continued. The court specifically asked: "Okay. I gather from what I am hearing that there is no defense objection to putting it over to June, correct?" *Id.* at 30. Both defense counsel answered: "Correct." *Id.* at 31. In addition, defense counsel further stated:

I did speak with [the AUSA] off the record, and for purposes of Speedy Trial Act, I am prepared to enter into a stipulation on behalf of the defendant, and the defendant and [co-defense counsel] will also sign the stipulation to the effect that there is excludable time based on the unavailability of that particular witness, and that would be from the date of the proposed surgery, if I'm not mistaken ... to the date of trial including her recovery period as well.

*Id.*

Then, during the same hearing, when issues related to the selection of a new jury panel and the compilation of audit information arose, the AUSA requested an additional six weeks continuance. And, as to that request, the district court specifically inquired: "Does the defense counsel disagree with any of the grounds [for the continuance] that counsel has stated?" *Id.* at 41. Defense counsel responded: "No, your honor." *Id.*

Despite Shetty's arguments that he was not the moving force behind the granting of the continuance or that Connie Hansen was neither an unavailable nor an essential witness, we find no violation of the Speedy Trial Act. We reject these arguments largely because even when given two direct opportunities to object to a continuance of the trial, the defense voiced no objection and affirmatively represented that the unavailability of a particular witness provided grounds for a finding of excludable time. In addition, we reject Shetty's arguments based upon the following items in the record: the "Stipulation Re[:] Continuance of Trial Date, Excludable Time Under the Speedy Trial Act, and Disclosure of Jury Panel" filed by the parties on April 19, 1996; the district court's corresponding order filed April 23, 1996; the Order Denying Defendant's Motion to Dismiss the Indictment, filed June 12, 1996; and

the Minute Order filed July 1, 1996 (incorporating the Government's Opposition to Defendant's Motion to Reconsider, filed June 24, 1996). Finally, we note that after Shetty and his counsel stipulated to the facts underlying the district court's findings of excludable time, at no time, either orally or in writing, did the defense attempt to withdraw its stipulation or request a trial date earlier than June 10, 1996.

### D. *The Record Demonstrates No Violation of the Act*

The defense relies heavily on *United States v. Clymer*, 25 F.3d 824 (9th Cir.1994), a Speedy Trial case in which this court remanded with instructions for the district court to dismiss an indictment with prejudice. However, any reliance on *Clymer* is misplaced because critical facts distinguish it from Shetty's case. In *Clymer*, the district court failed to make findings of excludable time. *Id.* at 828–29. *Clymer* also presented the unusual situation in which a 522–day trial delay could not be said to have "resulted from" the pendency of a motion to dismiss because the district court had rescheduled consideration of the motion until after it had heard evidence at trial. *Id.* at 830–31. In addition, unlike the defendant in *Clymer* who was in custody during the entire 522–day period, *see id.* at 827 n. 3, Shetty was not in custody while awaiting his trial.

To justify dismissal of the indictment with prejudice, Shetty (1) emphasizes the nature of his offense and that the Government can pursue civil remedies to collect what is owed, (2) points to the 551–day delay between his initial appearance and trial date, and (3) blames the district court for having "repeated disregard for the speedy trial mandate."

Given the totality of the record related to each continuance challenged by Shetty, we find no violation of the Speedy Trial Act. Here, the record made by the district court can hardly be considered an example of "repeated disregard for the speedy trial mandate." On the contrary, as it relied upon separate stipulations containing undisputed facts to support each continuance at issue, the district court sufficiently tied the length of each continuance to its reasons for granting each continuance. And, though techni-cally not called for by the excludable time provisions under 18 U.S.C. § 3161(h)(8)(A), the district court "went the extra mile" by requesting the parties to submit stipulations which specifically reflected that they agreed upon the factual circumstances supporting each continuance.

Had Shetty or his counsel not agreed with *any* of the factual circumstances supporting the continuances or the length of any continuance, it was *incumbent upon Shetty and his counsel* to refrain from signing the stipulations and to advise the court by objection or otherwise. For instance, had Shetty or his counsel objected to the length of any continuance at issue on appeal, there is nothing to suggest that the case could not have been tried at an earlier date or that the case would not have been reassigned to another judge for purposes of conducting the trial at an earlier date.

As clearly demonstrated by the record, however, the defense never objected to any of the continuances, even when the district court gave it direct opportunities to do so. Instead, Shetty personally stipulated to six of the eight continuances (and each of the three continuances upon which he focuses on appeal). As a cardiologist, Shetty is obviously well educated. The provisions of the Speedy Trial Act were not hidden in fine print in the stipulations which he, along with his counsel, personally signed. In fact, the title of each stipulation expressly referred to "Excludable Time Under the Speedy Trial Act."

In light of those stipulations, and in the absence of any objection by the defense, it is inappropriate for Shetty to seek reversal of his conviction under the Speedy Trial Act and dismissal of the indictment, with or without prejudice. *Cf. United States v. Palomba*, 31 F.3d 1456, 1462 (9th Cir.1994) (where defendant stipulates to the need for trial preparation, he cannot maintain that continuances give rise to a violation of the Speedy Trial Act). Each continuance at issue in Shetty's case was specifically supported by the district court's reference to facts, which were stipulated by the parties, and which buttressed each of its findings of excludable time under the Speedy Trial Act. *Cf. United States v. Jordan*, 915 F.2d 563, 566 (9th

Cir.1990) (reversing and remanding for determination on issue of dismissal of indictment with or without prejudice under 18 U.S.C. § 3162(a)(2), where Speedy Trial Act was violated because district court failed to limit the time of continuances and to make specific findings referring to facts underlying each continuance). Here, each continuance at issue was specifically limited in time (i.e., by the setting of another trial date). *Id.*

Though Shetty does not claim a violation of his Sixth Amendment right to a speedy trial, we find it worth noting that the factors considered in that context include: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the *prejudice to the defendant.*" *United States v. Baker,* 10 F.3d 1374, 1401 (9th Cir.1993) (citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)) (emphasis added). Here, the record—in addition to demonstrating reasonable delays and the lack of any objection by Shetty regarding such delays—lacks any showing of prejudice to Shetty. *See Clymer,* 25 F.3d at 832 (where defendant showed actual prejudice by loss of evidence, loss of the ability to prepare for trial, and loss of liberty which resulted from open-ended continuances during his incarceration).

■ Finally, in *Aviles–Alvarez,* 868 F.2d 1108, this court recognized that: "[I]t is the responsibility of *defense counsel,* the government, and the district court to take affirmative steps to protect a defendant's right to a trial" under the Speedy Trial Act. *Id.* at 1113 (emphasis added). In discharging that responsibility, defense counsel cannot wait until the eve of trial to assert a Speedy Trial Act violation. *Cf. United States v. Berberian,* 851 F.2d 236, 239 (9th Cir.1988) ("[A] defendant who seeks dismissal cannot wait until trial to assert a Speedy Trial Act violation."). Here, defense counsel emphasizes that Shetty's trial did not take place until 551 days after Shetty's initial appearance. However, Shetty's motion to dismiss under the Speedy Trial Act was not filed until June 1, 1996, at least 540 days after Shetty's initial appearance and only ten days before he finally went to trial. Although Shetty's motion technically came prior to trial and preserved his right to raise this issue on appeal under 18 U.S.C. § 3162(a)(2), we note the timing of

the motion. As aptly recognized by the district court: "Defense counsel may not simultaneously use the Act as a sword and a shield." Order Den. Def.'s Mot. to Dismiss Indictment, at 13 (quoting *United States v. Pringle,* 751 F.2d 419, 434 (1st Cir.1984)). We agree. And, given the record before us, we will not sanction the use of the Speedy Trial Act as a "sandbag," held for 540 days and then thrown at the district court ten days before trial.

In summary, the district court did not err when it denied Shetty's motion to dismiss the indictment under the Speedy Trial Act, given that Shetty never objected to any continuance and that he personally, and through counsel, stipulated to the facts underlying each of the district court's findings of excludable time pursuant to 18 U.S.C. § 3161(h)(8)(A). Therefore, because the district court's factual findings were not clearly erroneous, and its findings of excludable time are fully supported by the record before us, we affirm Shetty's conviction.

## II. *The "Net Worth Method"*

### A. *Standard of Review*

Shetty contends that the use of the net worth method of determining unreported income was improper during his trial and at sentencing.

■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *United States v. Manning,* 56 F.3d 1188, 1196 (9th Cir.1995). Where a party does not object to the use of evidence at the time of trial, however, we review for plain error. Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 731–32, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993).

■ A district court's evaluation of the reliability of evidence used for sentencing purposes is reviewed for an abuse of discretion. *United States v. Ponce,* 51 F.3d 820, 828 (9th Cir.1995).

### B. *The Net Worth Method in General*

■ Use of the net worth method is proper where a taxpayer's records do not

accurately reflect income. *United States v. Stonehill,* 702 F.2d 1288, 1296 (9th Cir.1983).

The net worth method seeks to derive taxable income in any given year by determining from all available evidence of assets and liabilities the increase (or decrease) in [a] taxpayer's net worth over a twelve-month period, adding to it his nondeductible expenses for that year, and subtracting from the sum any amount attributable to nontaxable sources. For example, if a taxpayer begins the year with a net worth (cost of property less liabilities) of $40,000, ends it with $50,000, and has spent $7,500 during the year on living expenses, his receipts must have been at least $17,500. And if there is no likely nontaxable sources of funds, such as gifts or inheritances, this set of facts constitutes strong circumstantial evidence that the receipts were taxable income.

*United States v. Colacurcio,* 514 F.2d 1, 2 n. 2 (9th Cir.1975) (quoting *McGarry v. United States,* 388 F.2d 862, 864 (1st Cir.1967)).

The net worth method was approved by the Supreme Court in *Holland v. United States,* 348 U.S. 121, 130–39, 75 S.Ct. 127, 132–37, 99 L.Ed. 150 (1954), and has been recognized in this circuit on numerous occasions. *United States v. Greene,* 698 F.2d 1364, 1370 (9th Cir.1983). The net worth method of establishing income may be used if the Government (1) accurately establishes the taxpayer's opening net worth, (2) identifies a likely source of income from which it may be inferred that the taxpayer's increase in net worth arose, and (3) conducts a reasonable investigation of any leads that suggest that the taxpayer properly reported his income. *Id.* (citing *Holland,* 348 U.S. at 132–38, 75 S.Ct. at 133–34).

### C. *As Used in Shetty's Trial and Sentencing*

In proving that Shetty subscribed to false tax returns in violation of 26 U.S.C. § 7206(1), the Government used the net worth method of proof to determine the amount of income Shetty failed to report on his tax returns. The defense did not object to the use of this evidence at trial.

Nevertheless, on appeal, Shetty contends that use of the net worth method was improper at trial and for purposes of sentencing because the Government made *"no* effort" to obtain his financial records. The defense argues that the Government was required to demonstrate that "it has made efforts to obtain the taxpayer's books and records but they [were] either unavailable or inadequate." These arguments misstate and ignore critical facts in the record.

First, there is ample demonstration by the Government that Shetty's records were unavailable *and* inadequate. For example, during the civil audit and despite repeated requests, Shetty did not provide the IRS with his books and records. Then, during the criminal investigation, defense counsel refused to provide any information regarding Shetty's books and records to the IRS special agent. Shetty admitted that he did not keep certain records typical of a medical practice, and his former receptionist testified that she never maintained a variety of records. Due to the unavailability and inadequacy of Shetty's records, the IRS agent stated that it was not possible to track down every payment from insurance companies or directly received from patients during the tax years at issue. From a practical standpoint, it was the lack of records which led to the criminal investigation in the first place.

Furthermore, although the defense argues that the Government should have used its subpoena/summons power and made more direct contacts with Shetty to compel him to turn over his records, there is absolutely nothing to suggest that there were any records in existence which accurately reflected Shetty's income. Had the Government pursued Shetty further, defense counsel would surely be arguing that the prosecution was attempting to deprive Shetty of his Fifth Amendment privilege against self-incrimination. *Cf. United States v. Helina,* 549 F.2d 713, 715–16 (9th Cir.1977) (taxpayer charged with tax evasion and subscribing to false tax return refused to produce books and records during criminal investigation and Government was forced to use the net worth method).

In this case Shetty was charged only with subscribing to false tax returns. Thus, technically, the Government was not required to show the exact amount of tax deficiency at

trial. Instead, it was merely required to show a false statement on Shetty's returns. Although Shetty challenges the use of the net worth method during the trial, on appeal he does not ask for a new trial based on the admission of that evidence. The only relief sought in relation to the net worth method is a remand for resentencing which, in view of the record, seems surprising. If anything, Shetty benefited from the use of the net worth method at sentencing.

The figures which the Government showed as unreported taxable income for the tax years at issue were *"conservative."* Tr. at 28 (Oct. 11, 1996) (emphasis added). For example, the Government did not consider living expenses for Shetty, his wife, and their four children. *See Colacurcio,* 514 F.2d at 2 n. 2 (living expenses typically considered when net worth method used to determine taxable income).

Also at sentencing, the district court considered Shetty's challenge to the use of the net worth method stating:

> The Court is satisfied that the evidence in this case was very likely the *tip of the iceberg.* That's the way in which the case was presented. It was presented on the matters, the cold, hard, easy to show and obvious items. There are indications to the Court that the figure may be well in excess of $120,000, but I don't think the Court needs to decide that at this point. The only issue to decide is whether the amount of tax loss exceeds $120,000 and the Court finds that it does. I think there is very clear evidence to the Court that that's the case.

Tr. at 50–51 (Oct. 11, 1996).

Given the entire record, any contention that Shetty's business and personal records accurately reflected his income verges on frivolous. *Cf. Stonehill,* 702 F.2d at 1296 (where taxpayers caused millions of unrecorded dollars to be deposited in Swiss bank accounts, any contention that their tax records accurately reflected income was "frivolous"). Therefore, allowing the use of the net worth method during the course of Shetty's trial was not plain error, and using it for purposes of sentencing was a proper exercise of the district court's discretion.

### III. *The Obstruction/Impeding Justice Enhancement*

#### A. *Standard of Review*

██ A district court's factual determinations under Section 3C1.1 of the guidelines are reviewed for clear error, and a district court's characterization of a defendant's conduct as obstruction within the meaning of Section 3C1.1 is reviewed de novo. *United States v. Ford,* 989 F.2d 347, 351 (9th Cir. 1993).

#### B. *The Section 3C1.1 Enhancement in General*

Section 3C1.1 of the guidelines is entitled "Obstructing or Impeding the Administration of Justice" and states: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (Nov. 1, 1990).

As the Commentary to Section 3C1.1 acknowledges, "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." U.S.S.G. § 3C1.1, comment. (n.2). The "non-exhaustive list of examples of the types of conduct to which this enhancement applies" includes "destroying or *concealing* or *directing or procuring another person* to destroy or *conceal* evidence that is material to an official investigation or judicial proceeding...." *Id.* at n. 3(d) (emphasis added).

#### C. *Application of the Enhancement to Shetty's Sentence*

██ On appeal, Shetty essentially takes two positions regarding the enhancement. First, he contends that since the Government "demonstrated that the $280,000 existed during the taxable years in question and relied on the $280,000 in establishing [his] net worth," the Government was "unable to demonstrate how the movement of the money in December 1991 obstructed its investigation or prosecution." (Reply Brief of Appellant, at 21 and 22.) Secondly, Shetty contends that the district court improperly "departed upward"—without any notice in the PSR or

at any time prior to sentencing— the extent it based the enhancement on a finding that the transfer of funds in December 1991 concealed his ability to pay a fine at the time of sentencing in October 1996. Despite these arguments, we do not find a remand for resentencing warranted.

For a district court to apply this enhancement, the guidelines only require a finding of an "*attempt*[ ] to obstruct or [impede], the administration of justice *during the investigation,* prosecution, *or* sentencing of the instant offense." U.S.S.G. § 3C1.1 (emphasis added).

The following time frames evidence Shetty's attempts to conceal the $280,000 once he learned of the IRS's civil audit, and later, after he learned of the criminal investigation. Shetty was initially informed by a letter dated June 20, 1990, that his tax returns were being audited. On June 29 and July 2, 1990, a total of $280,000 was withdrawn from savings accounts and made payable to Shetty's wife in four cashier's checks. The checks were not negotiated and became stale in September 1991 when a single check in the amount of $280,000 was reissued. On December 3, 1991, Shetty was notified of the criminal tax investigation; on December 23, 1991, the $280,000 cashier's check was voided; and on December 24, 1991, the funds were wired by Shetty's wife[2] to a bank in Switzerland.

The foregoing time frames can hardly be considered coincidental. The fact that the Government eventually learned of the $280,-000 does not change the fact that Shetty's transfer of the funds to a Swiss bank was a "classic attempt" to "*conceal evidence* ... *material to an official investigation.*" U.S.S.G. § 3C1.1, comment. (n.3(d)) (emphasis added). As it applied the obstruction enhancement at Shetty's sentencing hearing, the district court observed:

> The Court takes notice of the facts in this case, and it's very clear what was going on here. This money was being transferred out before it was closed in on in some way. I think it was very apparent that that's the case. And whether it was—

I think that the conduct had many possible benefits, as the defendant saw it. The potential fine in this case is not a nominal amount, and we see the defendant appearing today to argue that he just doesn't have the ability to pay a fine. And that argument would have been very hard to make had he had $280,000 sitting in the bank. So I think it's quite clear that that's an obstruction.

> What I have described as fairly commonplace in today's world is the person who puts the money offshore so that they can get access to it later and others can't, just in case. It's walking-around money, just in case somebody finds himself in some strange new place or has to take some other kinds of action. For that reason, it's an obstruction of justice, in my view.

> The transfer of it ... was an obstruction of justice, if you look at it in terms of the transmitting of evidence or the taking away of evidence, the presence of which could have helped the government's case....

Tr. at 51–52 (Oct. 11, 1996).

Of course, had the fine issue been the district court's only basis for the enhancement, and had the defendant not had any notice of that basis, a remand might be appropriate. However, the mere mention of the $280,000 in relation to Shetty's ability to pay a fine does not warrant a remand. On the contrary, the record on appeal demonstrates that the district court had ample bases for making the reasonable inference that Shetty "attempted to obstruct or impede the administration of justice."

In addition to the statements made at the hearing itself, the district court's "statement of reasons" attached to the judgment and commitment order filed October 18, 1996, adopted the factual findings and guideline application from the presentence report which detailed the nature of the charged offenses, i.e., "subscribing to false tax returns," and the *timing* of the transfer of $280,000 to Switzerland—three weeks after

---

**2.** It is undisputed that the bank accounts were in Shetty's wife's name, but he was named as the trustee on the accounts, and all of the money came from his medical practice because his wife did not have any source of income.

Shetty learned of the criminal investigation. Moreover, on appeal, Shetty concedes that the "$280,000 existed during the taxable years in question." In light of that concession, one must conclude that Shetty's attempt to conceal $280,000 in a Swiss bank account was, at the very least, an "attempt" to conceal "evidence ... material to an official investigation" of his tax returns for 1987, 1988 and 1989. U.S.S.G. § 3C1.1, comment. (n.3(d)). And, as simply stated by the Government: "[I]n a tax case, money is material evidence."

We find the district court's factual determinations under Section 3C1.1 of the guidelines were not clearly erroneous, and that the characterization of Shetty's conduct as an obstruction within the meaning of Section 3C1.1 was correct as a matter of law.

AFFIRMED.