142 F.3d 447
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Salvador OLGUIN, Defendant-Appellant.
 No. 97-50187.
D.C. No. CR-96-01098-1-WBE.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 9, 1998**.
Decided April 22, 1998.
 
 Appeal from the United States District Court for the Southern District of California William B. Enright, District Judge, Presiding.
 Before FARRIS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Salvador Olguin appeals his conviction and sentence for conspiracy to distribute methamphetamine, distribution of methamphetamine, and possession of methamphetamine with intent to distribute. See 21 U.S.C. §§ 841(a)(1), 846. We affirm his conviction, but vacate his sentence and remand for further proceedings.
 
 
 3
 1. Olguin's first constellation of claims revolves around the district court's handling of his desire to bring in evidence to impeach a non-testifying informant. In the first instance, he sought to rely on the rule that a declarant can be impeached when hearsay evidence of that declarant has been admitted. See Fed.R.Evid. 806. But at the time the district court ruled, no hearsay had been admitted. The informant's side of taped conversations with Olguin had come into evidence, but that side was obviously contextual--its truth or falsity was outside the point. See United States v. Becerra, 992 F.2d 960, 965 (9th Cir.1993); United States v. Taghipour, 964 F.2d 908, 910 (9th Cir.1992); see also United States v. McClain, 934 F.2d 822, 832-33 (7th Cir.1991). Moreover, the district court was not asked to give a limiting instruction. Finally, the district court did permit impeaching evidence to come in once Olguin had examined the government's case agent, Patton, about conversations with the informant regarding the informant's past drug dealing, and the government had responded to that by submitting evidence that some of the past drug dealing had been with Olguin himself. At that point, hearsay evidence had come in and Rule 806 did apply, as the district court recognized. Thus, Olguin was able to get the impeaching evidence before the jury at the appropriate time and the jury was in a position to consider what all of the informant's statements and actions were worth, considering his character. The district court did not abuse its discretion. See United States v. Shetty, 130 F.3d 1324, 1331 (9th Cir.1997), petition for cert. filed (U.S. Mar. 17, 1998) (No. 97-1531).
 
 
 4
 2. Anent the impeaching evidence claim is Olguin's assertion that the evidence of his prior drug dealing with the informant should not have been admitted at all. In other words, he suggests, he was forced to pay too high a price to obtain the admission of the evidence impeaching the informant's credibility. The district court did not abuse its discretion in this respect either. The statements were admissible once Olguin himself elicited conversations about the informant's past drug dealing. In so doing, Olguin sought, among other things, to attack the government agents' use of the informant to focus upon Olguin. Olguin hoped to show that the government agents knew the informant to be a bad person and had no good reason to use him to lure Olguin into an ambiguous drug-like transaction. In so doing, he opened the door to an explication by the agents of the whole pertinent part of their discussion with the informant. See United States v. Rinn, 586 F.2d 113, 119-20 (9th Cir.1978); United States v. Parr-Pla, 549 F.2d 660, 663 (9th Cir.1977); cf. United States v. Collicott, 92 F.3d 973, 979-81 (9th Cir.1996); United States v. Payne, 944 F.2d 1458, 1471-72 (9th Cir.1991).
 
 
 5
 By the same token, the district court did not abuse its discretion in admitting the other crimes evidence. See Fed.R.Evid. 404(b), 403. In the first place, the prior dealings were intertwined with the current offense because they all were parts of a long course of criminal dealings between Olguin and the informant. See United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir.1995); United States v. Ripinsky, 109 F.3d 1436, 1442 (9th Cir.), amended by, 129 F.3d 518 (1997), cert. denied, --- U.S. ----, 118 S.Ct. 870, 139 L.Ed.2d 767 (1998); United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993); United States v. Soliman, 813 F.2d 277, 278-79 (9th Cir.1987). Secondly, Olguin denied knowledge or intent regarding participation in a drug transaction, and the other crimes evidence was admissible to counter that. See e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir.1992); United States v. Felix-Gutierrez, 940 F.2d 1200, 1207 (9th Cir.1991). Nor was admission of the evidence unfairly prejudicial. See Felix-Gutierrez, 940 F.2d at 1207.
 
 
 6
 3. Olguin asserts that the evidence was insufficient to sustain his convictions of the conspiracy and of the substantive counts. But, "[t]here is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Scott, 74 F.3d 175, 177-78 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 131, 136 L.Ed.2d 80 (1996). The evidence of Olguin's leading participation in the conspiracy and of his direction of the co-conspirators was largely captured on videotape and audiotape and bordered on the overwhelming. See United States v. Reese, 775 F.2d 1066, 1071-72 (9th Cir.1985); United States v. Perez, 491 F.2d 167, 171 (9th Cir.1974). Furthermore, conviction of the substantive offenses at which he was not actually present was easily founded upon both Pinkerton[1] liability, and aiding and abetting liability. See Hegwood, 977 F.2d at 498 (Pinkerton liability); United States v. Ferris, 719 F.2d 1405, 1408 (9th Cir.1983) (Pinkerton liability); United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.1988) (aiding and abetting).
 
 
 7
 4. Olguin next claims that the district court committed clear error when it added two points to his guideline offense level for his role in the offense. See USSG § 3B1.1(c)[2]. We disagree for much the same reasons that we disagree with his other characterizations of the evidence in this case. The evidence supported a determination that at least two criminally responsible people participated in this criminal activity and that Olguin, at the very least, managed and directed one of them, his brother Leonardo. See United States v. Wills, 88 F.3d 704, 721 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 499, 136 L.Ed.2d 390 (1996); United States v. Sanchez, 908 F.2d 1443, 1448 (9th Cir.1990); United States v. Carvajal, 905 F.2d 1292, 1294-96 (9th Cir.1990). The district court did not commit clear error. See United States v. Ponce, 51 F.3d 820, 826 (9th Cir.1995).
 
 
 8
 5. Olguin finally asserts that the district court improperly added two points to his guideline offense level on the theory that he had obstructed justice by perjuring himself at trial. See USSG § 3C1.1 & comment. (n. 3(b)). While it might well be that the apparently counterfactual story that Olguin told at trial was perjurious, we must agree with him that the district court erred when it enhanced his guideline score without making adequate findings. The district court did comment that it, and Olguin, knew that what he said at trial was not true. The presentence report, which the district court adopted by reference, had pointed out that Olguin was not believed by the jury and was "viewed as being untruthful." But the Supreme Court has required more than that. In United States v. Dunnigan, 507 U.S. 87, 94-95, 113 S.Ct. 1111, 1116-17, 122 L.Ed.2d 445 (1993), it required that the district court must make "independent findings necessary to establish" that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony." It did say that the findings could be rather brief. See id. at 95, 113 S.Ct. at 1117. We, too, have allowed fairly cryptic, even asthenic, statements to justify the enhancement. See United States v. Shannon, No. 97-10057, slip op. 1655, 1670-71 (9th Cir. Mar. 2, 1998); United States v. Garcia, 135 F.3d 667, 670-71 (9th Cir.1998); United States v. Ancheta, 38 F.3d 1114, 1118 (9th Cir.1994); United States v. Arias-Villanueva, 998 F.2d 1491, 1512 (9th Cir.1993); but see United States v. Rubio-Topete, 999 F.2d 1334, 1341 (9th Cir.1993) (finding insufficient). But none have been as cryptic as the district court's statement in the case at hand. That statement was insufficient.
 
 
 9
 Thus, while we affirm the district court on the § 3B1.1(c) issue, we must vacate the sentence and remand so that the district court can reconsider the § 3C1.1 enhancement. If it determines that the enhancement should still stand, it need only make appropriately detailed findings, and reinstate the sentence which we have vacated. It need not revisit any other sentencing questions.
 
 
 10
 Conviction, AFFIRMED; Sentence, VACATED and REMANDED.
 
 
 
 **
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir. R. 34-4 and Fed. R.App. P. 34(a)
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Pinkerton v. United States, 328 U.S. 640, 646-48, 66 S.Ct. 1180, 1183-84, 90 L.Ed. 1489 (1946)
 
 
 [2]
 All references are to the Sentencing Guidelines effective November 1, 1996