**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50555 |
| Plaintiff - Appellee, | D.C. No. 8:12-cr-00241-JVS-1 |
| v. | |
| JESUS QUINONES-CHAVEZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted September 2, 2015
Pasadena, California

Before: O'SCANNLAIN, FISHER, and BYBEE, Circuit Judges.

Jesus Quinones-Chavez appeals his jury convictions and sentence for

conspiring to bring aliens into the United States, 8 U.S.C. §§ 1324(a)(1)(A)(v)(I),

(a)(1)(A)(i), (a)(1)(B)(i), bringing aliens to the United States for private financial

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

gain, 8 U.S.C. § 1324(a)(2)(B)(ii), and aiding and assisting an alien convicted of an aggravated felony to enter the United States, 8 U.S.C. § 1327.

I

Quinones argues that his Due Process and Confrontation Clause rights were violated by the exclusion of a self-exculpatory statement he claims to have made during his post-arrest interview. But unlike the interviewing officer's testimony about Quinones' admission, that purported statement was inadmissible hearsay. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). Due Process forbids the government from knowingly introducing false evidence. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). It does not, however, mandate that a court allow a defendant to place his inadmissible statements "before the jury without subjecting [himself] to cross-examination." *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988)

(per curiam).  If Quinones wished to communicate his version of events, he could have testified.[1]

Likewise, Quinones' Confrontation Clause rights were not violated by limiting his cross-examination of the officer to admissible testimony.  Defense counsel extensively cross-examined the officer about his motivations for arresting and subsequently Mirandizing Quinones.  Such questioning was adequate to allow the jury to "appropriately draw inferences relating to the

---

[1] In his concurrence, Judge Fisher agrees with our ultimate conclusion, but insists that Quinones' claim should be analyzed under the "common law rule of completeness."  We decline to address this issue, which was waived.  *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) (explaining that an appellate court reviews "only issues which are argued specifically and distinctly in a party's opening brief" (citation omitted)).  Moreover, leaving aside the fact that this Court has never held that the rule of completeness applies to oral statements, *see Ortega*, 203 F.3d at 682, the record here clearly indicates that the district court "carefully and thoroughly considered the government's proffered statements from the post-arrest interview and correctly determined that those statements were neither misleading nor taken out of context," *United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014).  The court engaged in an extended colloquy with defense counsel concerning Quinones' version of his post-arrest interview, and even permitted defense counsel to elicit a yes or no answer from Agent Rodriguez as to whether Quinones said more than just that he was the driver of the boat.  We fail to see how the district court's ruling in this regard could possibly be construed as an abuse of discretion.  *See United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996).

reliability of the witness." *Slovik v. Yates*, 556 F.3d 747, 752 (9th Cir. 2009) (citation omitted).

## II

Quinones next argues that the officer's testimony that "multiple witnesses" identified Quinones as the driver of the smuggling boat violated the Confrontation Clause because only some of these witnesses testified. But that testimony emerged only after defense counsel opened the door by eliciting testimony concerning these witnesses. *See United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992) ("[A]ppellants may not seek reversal on the basis of their own evidentiary errors." (citation omitted)); *Burgess v. Premier Corp.*, 727 F.2d 826, 834 (9th Cir. 1984).

Even more importantly, the officer's testimony was introduced for the non-hearsay purpose of explaining the officer's motivation to Mirandize Quinones. *See United States v. Cruz-Diaz*, 550 F.3d 169, 176-77 (1st Cir. 2008); *see also United States v. Jiminez*, 564 F.3d 1280, 1288 (11th Cir. 2009). Further, the trial judge's limiting instruction—although imperfect—was sufficient to cure any possibly prejudicial effect and was not plain error.

## III

The trial court properly excluded evidence concerning two absent witnesses. Quinones claims that one witness's statement that Quinones was "on top getting fuel" should have been admitted under Rule 803(3) because the witness also said he would not identify the driver out of fear. But Rule 803(3) by its very terms forbids this kind of maneuver. *See* Fed. R. Evid. 803(3) (declaring "a statement of memory or belief to prove the fact remembered or believed" inadmissible under the rule); *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) ("If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared because Galkin threatened me.'") (citation and emphasis omitted).

Likewise, the trial judge correctly ruled that evidence of a second absent witness's criminal conviction was inadmissible. Because the agent's reference to "multiple witnesses" was not hearsay, that witness's credibility was simply not at issue. *See* Fed. R. Evid. 806 (limiting attacks on a declarant's credibility to instances in which hearsay has been admitted).

IV

5

Quinones' conviction under 8 U.S.C. § 1327 was valid. Section 1327 makes it a crime to "knowingly aid[] or assist[]" an inadmissible alien to enter the United States where that alien has been convicted of an aggravated felony that also qualifies as a crime of moral turpitude under 18 U.S.C. § 1182(a)(2). For purposes of § 1327, the term "aggravated felony" includes "an offense relating to . . . counterfeiting [or] forgery." 18 U.S.C. § 1101(a)(43)(R). One alien Quinones transported had been convicted of "manufactur[ing], distribut[ing], or sell[ing] false documents to conceal the true citizenship or resident alien status of another person" in violation of California Penal Code § 113. Quinones contends that this crime qualifies as neither an aggravated felony nor a crime of moral turpitude under § 1327. He also argues that recent Supreme Court precedent requires the government to prove Quinones knew the nature of the alien's crimes. We disagree.

Section 1101(a)(43)(R) offers a broad definition of an aggravated felony. *See Rodriguez-Valencia v. Holder*, 652 F.3d 1157, 1159 (9th Cir. 2011) (per curiam) ("[W]hen Congress added convictions relating to counterfeiting to the definition of aggravated felony, it was well understood . . . that the generic crime of counterfeiting extended far beyond the imitation of currency."); *Albillo-*

*Figueroa v. INS*, 221 F.3d 1070, 1073 (9th Cir. 2000) (noting that the 'relating to' language in § 1101(a)(43)(R) covers "a range of activities beyond those of counterfeiting or forgery itself").  Quinones nonetheless argues that § 113 does not qualify because it lacks an explicit "intent to defraud" element that this Court has sometimes required.  *See Morales-Alegria v. Gonzales*, 449 F.3d 1051,1056 (9th Cir. 2006).  But the California Supreme Court has observed that the elements of § 113 are: "(1) the manufacture, distribution or sale of false documents; and (2) the intent to conceal the true citizenship or resident alien status of another person."  *People v. Rizo*, 996 P.2d 27, 30 (Cal. 2000) (quotation marks omitted).  Moreover, in *Rodrigez-Valencia*, our Court held that an underlying criminal statute may constitute an aggravated felony under § 1101(a)(43)(R) where the underlying offense does not explicitly require an intent to defraud but is by its nature "an inherently fraudulent crime." *Rodriguez-Valencia*, 652 F.3d at 1160 (citation omitted).  Because *any* crime committed

7

under § 113 requires an intent to defraud, there is little doubt that § 113 is an "inherently fraudulent crime" and thus qualifies as an aggravated felony.[2]

Quinones' argument that § 113 does not qualify as a crime of moral turpitude is similarly unconvincing. "A crime having as an element the intent to defraud clearly is one involving moral turpitude," and may be ascertained by "the statutory definition or by the nature of the crime." *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980) (per curiam). The crime prohibited in § 113 is one that by nature involves both an intent to produce counterfeit documents and the intent to conceal the immigration status of others wrongfully. *See Rizo*, 996 P.2d at 30. Because the intent to defraud is inseparable from the acts encompassed by § 113, the district court rightly determined that § 113 is a crime of moral turpitude.

---

[2] Quinones attempts to avoid this conclusion by distinguishing the "intent to defraud" and the "intent to deceive." But that argument proves too much. The Supreme Court has observed that the term defraud means "to deprive of some right, interest, or property by deceit." *See United States v. Yermian*, 468 U.S. 63, 73 n.12 (1984) (citation and internal quotation marks omitted). The manufacture, distribution, or sale of false documents undeniably deprives the government of its exclusive legal right to issue valid identification, and deprives those receiving such documents of their valid legal interest in confirming the conveyer's true citizenship status. *See, e.g.*, 18 U.S.C. § 1028 (criminalizing various uses of "false identification document[s]," and defining such documents as "not issued by or under the authority of a governmental entity" but appearing to be so issued).

8

Finally, contrary to Quinones' assertion, recent Supreme Court precedent is consistent with our Court's holding that § 1327 does not require the government to prove a defendant knew *why* the alien he was transporting was inadmissible. *See United States v. Flores-Garcia*, 198 F.3d 1119 (9th Cir. 2000). In *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), the Supreme Court explicitly recognized that "context" may suggest that a mens rea term does not apply to all elements in a crime, *id.* at 652, and one Justice specifically cited § 1327 as an example, *id.* at 660 (Alito, J., concurring in part and concurring in the judgment).  Quinones' conviction under § 1327 was valid, and his sentence was not unreasonable.

**AFFIRMED.**

*United States v. Quinones-Chavez*, No. 13-50555

FISHER, Circuit Judge, concurring in part, dissenting in part and concurring in the judgment:

I join in the judgment and in the reasoning of the majority with the exception of the discussion in part I. I would hold the district court erred by failing to recognize its discretion under the rule of completeness to permit the defense to cross examine the government's witness regarding Quinones' postarrest statement. Because the error was harmless, however, I concur in the result.

Agent Rodriguez testified Quinones admitted to driving the smuggling boat. This testimony was important to the prosecution because it suggested Quinones had confessed to bringing aliens into the United States and contradicted his defense that he was a mere passenger. Quinones maintains he actually told Rodriguez he drove the boat only *while the captain was urinating and fixing the engine*, evidence that would support his defense that he was not part of the smuggling operation. He contends the government "sliced and diced" his words into a confession by eliciting testimony solely about the incriminating portion of his statement while omitting testimony about the exculpatory portion. The district court refused to allow Quinones to cross examine Rodriguez about the exculpatory part of the statement, concluding "[t]he rule of completeness . . . does not apply because the

1

statements were made orally" rather than in writing. In the alternative, the court ruled that, even if the rule of completeness applied to unrecorded oral statements, the court would be compelled to exclude the testimony Quinones sought to elicit from Rodriguez as inadmissible hearsay, citing *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). The court advised Quinones that if he wished to contest the government's portrayal of his role on the boat, he would have to waive his Fifth Amendment privilege and testify himself.

I would hold the district court misapplied the rule of completeness. Although the rule of completeness as partially codified in Rule 106 of the Federal Rules of Evidence is limited to written and recorded statements, the common law rule of completeness continues to carry weight, and it applies broadly not only to written and recorded statements but also to unrecorded oral statements. The common law rule of completeness, moreover, trumps the hearsay rule. Thus, the district court had discretion to permit Quinones to cross examine Rodriguez regarding his complete postarrest statement. The court abused its discretion by ruling otherwise.

A.     **The Common Law Rule of Completeness Applies to Unrecorded Oral Statements**

The district court properly recognized the rule of completeness codified by

2

Rule 106 applies solely to written and recorded statements, not to unrecorded oral statements.  Under Rule 106, when "a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  "For practical reasons, [Rule 106] is limited to writings and recorded statements and does not apply to conversations."  Fed. R. Evid. 106 advisory committee's note.

Rule 106, however, is not the final word on the rule of completeness.  Under the common law, the rule of completeness "cover[s] not only writings taken out of context, but also . . . the truncated use of acts, declarations, and conversations." 21A Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5072 (2d ed. 2015).  As both this court and the Supreme Court have recognized, the common law rule of completeness continues to operate independently notwithstanding its partial codification in Rule 106.  *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988) (applying the common law rule of completeness even after it was "partially codified" in Rule 106); *United States v. Collicott*, 92 F.3d 973, 983 n.12 (9th Cir. 1996) (recognizing Rule 611(a) "grants district courts the same authority regarding oral statements which [Rule] 106 grants regarding written and recorded statements" (alteration in original) (quoting *United States v. Li*, 55 F.3d 325, 329

3

(7th Cir. 1995))); *cf. United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (citing *Collicott*, 92 F.3d at 983 & n.12 and assuming without deciding the common law rule of completeness applies to oral statements).[1]

District courts' authority to apply the common law rule is reenforced by Rule 611, which states "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth," Fed. R. Evid. 611(a), and "restates in broad terms the power and obligation of the judge as developed under common law principles," Fed. R. Evid. 611 advisory committee's note. In applying this rule, district courts should "exercise common sense and a sense of

---

[1] In *Beech Aircraft*, the government questioned a witness about whether he made certain statements in a letter, then used evidentiary objections to prevent the opposing party from cross examining the witness about other parts of the letter to show its overall meaning differed from the misleading impression given by the government's selective presentation. Although "much of the controversy" in the case "centered on whether Rule 106 applies," the Supreme Court found it "unnecessary to address that issue" because under the common law rule of completeness, it was "obvious[] that when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is . . . admissible." *Beech Aircraft*, 488 U.S. at 172. *Beech Aircraft*'s embrace of the common law completeness doctrine without determining whether Rule 106 applied demonstrates the common law rule survives independently of Rule 106. *See* 21A Graham, *supra*, § 5073 n.1 ("In *Beech Aircraft Corp. v. Rainey*, the Supreme Court held that adoption of Rule 106 did not repeal the common law completeness doctrine; hence, that doctrine can be invoked for completeness where Rule 106 does not apply." (citation omitted)).

fairness" and "require[] a party offering testimony as to an [oral] utterance to present fairly the 'substance or effect' and context of the statement" such that "the testimony . . . 'at least represent[s] the tenor of the utterance as a whole, and not mere fragments of it.'" *United States v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987) (quoting 7 J. Wigmore, *Evidence* § 2099 (Chadbourn rev. 1978)).

A district court abuses its discretion under Rule 106 when it excludes part of a statement if "the edited version . . . 'distorts the meaning of the statement or excludes information substantially exculpatory of the declarant.'" *United States v. Dorrell*, 758 F.2d 427, 434-35 (9th Cir. 1985) (quoting *United States v. Kaminski*, 692 F.2d 505, 522 (8th Cir. 1982)). The same standard should apply to oral statements under the common law rule of completeness operating through Rule 611(a). Thus, if the partial statement elicited from Rodriguez on direct examination was misleading under the *Dorrell* standard, Quinones should have been permitted to elicit the complete statement on cross examination of Rodriguez.

B. **The Common Law Rule of Completeness Should Be Construed to Trump the Hearsay Rule**

In my view, the district court also erred in ruling it was compelled to exclude the remainder of Quinones' statement under the hearsay rule. To be sure, the district court was correct that the hearsay rule was implicated here. The

government was free to elicit testimony from Rodriguez about Quinones'

postarrest statement because Quinones and the government were party opponents.

*See* Fed. R. Evid. 801(d)(2). But were Quinones to elicit testimony from

Rodriguez about the remainder of the same postarrest statement, the statement

would be hearsay because Quinones would be offering his own out-of-court

statement rather than the statement of an opposing party. *See* Fed. R. Evid. 801(c),

802.

Wise courts and commentators, however, have concluded the rule of

completeness should override, or "trump," the hearsay rule in this specific context.

*See, e.g.*, 21A Graham, *supra*, § 5072 ("[T]he common law doctrine carries with it

what Professor Nance calls 'the trumping function'; that is, evidence that falls

within the completeness doctrine is [admissible[2]] even though it would otherwise

be inadmissible under some other rule of evidence. Thus, the opponent can

introduce what would otherwise be hearsay to complete a truncated statement

offered by the proponent." (footnotes omitted)); Stephen A. Saltzburg et al.,

*Federal Rules of Evidence Manual* § 106.02 (11th ed. 2015) ("A party should not

---

[2] Although this word appears as "inadmissible" in the original text, this is clearly a typographical error in context and in light of the citation to Professor Nance's law review article. *See* Dale A. Nance, *A Theory of Verbal Completeness*, 80 Iowa L. Rev. 825, 839 (1995).

be able to admit an incomplete statement that gives an unfair impression, and then object on hearsay grounds to completing statements that would rectify the unfairness. The appropriate way to resolve the hearsay issue is to hold that the party who offers an incomplete statement or document forfeits any hearsay objection to completing evidence that is necessary to correct a misleading impression."); Dale A. Nance, *Verbal Completeness and Exclusionary Rules Under the Federal Rules of Evidence*, 75 Tex. L. Rev. 51, 54 (1996) ("If a proponent has evidence of the opponent's admission, the proponent may well be tempted to introduce the part of that admission that is most damaging to the opponent, secure in the knowledge that the opponent cannot respond. The completeness doctrine vitiates this maneuver by assuring the introduction of all parts of the admission that are demanded by the opponent and that affect the inferences that may legitimately be drawn from the part of the utterance the proponent has chosen to introduce. Thus, the completeness doctrine serves a *trumping* function in that it trumps exclusionary rules that would otherwise prevent the opponent's response."); *United States v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008) ("[O]ur case law unambiguously establishes that the rule of completeness may be invoked to facilitate the introduction of otherwise inadmissible evidence."); *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function

7

only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court."); *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1160-61 & n.6 (C.D. Cal. 2008) ("[T]he Rule of Completeness was designed to prevent the Government from offering a 'misleadingly-tailored snippet.' . . . . Although the Rule of Completeness cannot serve as an end run around the prohibition on inadmissible hearsay, this principle does not allow the Government to offer abridged portions of statements that distort the meaning of a statement." (quoting *Collicott*, 92 F.3d at 983)). Indeed, when courts have refused to recognize the common law rule's trumping function, some judges have come to regret that decision. *See United States v. Adams*, 722 F.3d 788, 826-27 & n.31 (6th Cir. 2013) (criticizing the Sixth Circuit's "bar against admitting hearsay" under the rule of completeness as "leav[ing] defendants without redress" for "the government's unfair presentation of the evidence" and suggesting en banc reconsideration of that rule).

The trumping function served by the rule of completeness is all the more important where, as here, a criminal defendant's constitutional right against self-incrimination is involved. As numerous courts have recognized, a criminal

defendant should not be forced to choose between leaving the government's distorted presentation unanswered and surrendering the Fifth Amendment right not to testify. *See Sutton*, 801 F.2d at 1370 ("Since this was a criminal case [the defendant] had a constitutional right not to testify, and it was thus necessary for [the defendant] to rebut the government's inference with the excluded portions of these recordings."); *United States v. Marin*, 669 F.2d 73, 85 n.6 (2d Cir. 1982) ("[W]hen the government offers in evidence a defendant's confession and in confessing the defendant has also made exculpatory statements that the government seeks to omit, the defendant's Fifth Amendment rights may be implicated."); *United States v. Walker*, 652 F.2d 708, 713-14 (7th Cir. 1981) (observing "the Government's incomplete presentation may have painted a distorted picture of [the criminal defendant's] prior testimony which he was powerless to remedy without taking the stand" and acknowledging that "[f]orcing the defendant to take the stand in order to introduce the omitted exculpatory portions of [a] confession . . . is a denial of his right against self-incrimination" (alternations in original) (quoting 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 106[01] (1979)) (internal quotation marks omitted)); *cf. Simmons v. United States*, 390 U.S. 377, 394 (1968) ("[O]ne constitutional right should [not]

9

have to be surrendered in order to assert another.").[3]

I do not read our case law as precluding us from applying the trumping principle here and making it a part of our circuit law. Neither *United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000), nor *United States v. Fernandez*, 839 F.2d 639 (9th Cir. 1988), expressly bars a district court from allowing a criminal defendant to introduce otherwise inadmissible evidence under the common law rule of completeness when the prosecution abuses the asymmetric hearsay rule to introduce a misleadingly tailored snippet of the defendant's statement.[4] In *Ortega*,

_____

[3] Even when a criminal defendant chooses to testify, the trumping function remains important. Absent trumping, the defendant could testify to the issues (i.e., underlying facts), but could not, consistent with the hearsay rule, testify to the remainder of the truncated statement offered by the prosecution. Testifying to the underlying facts may not be as effective as providing the complete statement. *See* Nance, *A Theory of Verbal Completeness*, *supra*, at 846-47 n.68 ("One might argue that trumping the hearsay rule is unnecessary in view of the opponent's opportunity to testify directly to the issues, one of the factors that seems to warrant the asymmetry in the admissions exception in the first place. This opportunity, however, will often be inadequate, since a trier of fact ignorant of the true tenor of the hearsay is likely to discount the in-court, self-serving testimony in favor of the out-of-court, adverse admission." (citation omitted)).

[4] We have held "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence." *Collicott*, 92 F.3d at 983 (citations and internal quotation marks omitted); *see also Ortega*, 203 F.3d at 682 (citing *Collicott*, 92 F.3d at 983). But we have never so held regarding the *common law* rule of completeness, which is the relevant doctrine here. Nor have we ever held district courts lack discretion under Rule 106 or the common law rule to admit otherwise inadmissible hearsay when the government abuses the hearsay rule to introduce

(continued...)

10

the common law rule of completeness was not implicated, because we concluded

"[t]he officer's testimony did not distort the meaning of Ortega's statements." 203

---

⁴(...continued)
misleading evidence. *See Castro-Cabrera*, 534 F. Supp. 2d at 1161 ("[W]hile the Rule of Completeness cannot be used in a general sense as an end run around the usual rules of admissibility, each analysis must be done on a case-by-case basis in order to avoid the injustice of having the meaning of a defendant's statement distorted by its lack of context."). As *Castro-Cabrera* intimates, our cases declining to recognize a trumping function of Rule 106 have not involved manipulation of the hearsay rule to introduce a "misleadingly-tailored snippet," let alone in a criminal trial when a defendant cannot correct the distortion except by waiving his privilege against self-incrimination. *See id.* at 1161 n.6 (distinguishing *Ortega* and *Collicott* on the ground that "there is not an indication in either [case] that the offered portions of statements created distortion or misrepresentation of the meaning of the statement"); *Ortega*, 203 F.3d at 683 ("The officer's testimony did not distort the meaning of Ortega's statements because Ortega testified to the statements not mentioned by the officer."); *Collicott*, 92 F.3d at 983 ("[T]he purpose of Rule 106 would not be served if Zaidi's statements were admitted because there was no concern in this case that Collicott introduced a misleadingly-tailored snippet from Zaidi's statement to Kehl."). *See also United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007) ("The inculpatory statements elicited on direct examination of Agents Kirk and Duncan were not taken out of context or otherwise distorted." (citing *Ortega*, 203 F.3d at 683, and *United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005))); *Nakai*, 413 F.3d at 1022 ("In neither instance was the unadmitted hearsay necessary to place the admitted statement in context." (citing *Ortega*, 203 F.3d at 682)); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981) (holding the district court did not abuse its discretion under Rule 106 when it "carefully considered the entire transcript, and added material to the excerpt offered by the government to put it in proper context . . . [but] concluded that the portion appellants wished to submit was irrelevant and was inadmissable hearsay"). Whatever the limits of the trumping function of the rule of completeness, at minimum it should apply in the particular circumstances where the government has abused the asymmetrical nature of the hearsay rule in a criminal trial and exclusion under the hearsay rule would implicate a criminal defendant's Fifth Amendment right not to testify on his or her own behalf.

11

F.3d at 683. Furthermore, we held requiring the defendant to rely on his own testimony as to his exculpatory statements "did not infringe upon his Fifth Amendment right not to testify because he had *already testified* prior to the officer's testimony." *Id.* (emphasis added). In *Fernandez*, there was no issue of completeness, as the defendant sought to elicit his standalone denial made to an FBI agent following his arrest. *See* 839 F.2d at 640. Thus, *Fernandez* says nothing about the scope of the rule of completeness.

\* \* \*

In sum, I would hold the district court misapprehended the rules of evidence in two significant respects. First, the court erred by limiting the rule of completeness to written and recorded statements; under Rule 611, the court was free to avail itself of the common law rule of completeness, which extends to unrecorded oral statements as well. Second, I would hold the rule of completeness serves a trumping function that overrides the hearsay rule in limited circumstances.

Nonetheless, I concur in the result reached by the majority because I cannot say the district court's misapprehensions regarding the scope of its authority were prejudicial. *See United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc). Quinones failed to make an adequate offer of proof to show that Rodriguez would have testified to the alleged exculpatory statement. *See* Fed. R. Evid.

12

103(a)(2).  When asked on cross examination whether Quinones had said anything else "about him driving the boat," Rodriguez testified: "He said he also needed money, and he was coming here to see family."  Rodriguez did not testify or suggest that Quinones had said he drove the boat only while the captain was otherwise occupied.  Although Rodriguez's response was stricken upon objection, he most likely would have given the same answer had the court permitted Quinones to cross examine him about the complete postarrest statement.  Because Quinones has proffered no basis to conclude Rodriguez would have offered the alleged exculpatory testimony if the challenged cross examination had been allowed, I cannot conclude the district court's misunderstandings regarding the rule of completeness were prejudicial.